IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket No. 36865

| STATE OF IDAHO, | ) | 2011 Opinion No. 49 |
| | ) | |
| Plaintiff-Respondent, | ) | Filed: August 11, 2011 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| JUDY ANN MENDOZA, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

Appeal from the District Court of the Fifth Judicial District, State of Idaho, Twin Falls County. Hon. Randy J. Stoker, District Judge.

Judgment of conviction and sentence for forgery with a persistent violator enhancement, <u>affirmed</u>.

Molly J. Huskey, State Appellate Public Defender; Elizabeth Ann Allred, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; John C. McKinney, Deputy Attorney General, Boise, for respondent.

_____

GUTIERREZ, Judge

Judy Ann Mendoza appeals from her judgment of conviction and sentence for one count of forgery with a persistent violator enhancement. For the reasons set forth below, we affirm.

## I.

## BACKGROUND

On January 6, 2009, Jerry Haman went into a business and asked the employee to cash a one hundred dollar bill for ten and twenty dollar bills. The employee took the bill, but noticed that it did not feel right--it seemed thin, and the color was "off." After the employee confirmed that the bill was not legitimate with a money marking pen, she called for the store manager who also determined that the bill was counterfeit and called the police. After the police arrived they confirmed that the bill was indeed counterfeit, and after talking with Haman they located Mendoza sitting in the driver's seat of a car in the parking lot of the store. One of the officers informed Mendoza that Haman had been detained inside for trying to pass a counterfeit bill and

1

asked her if she had any more of the same money. Mendoza informed the officer that she had another one hundred dollar bill in her purse. After examining the bill, the officer concluded that it was also counterfeit. After being placed under arrest, Mendoza explained that a friend named Peggy had given her the money to pay back a debt. However, when the officer asked Mendoza more about Peggy, Mendoza admitted that she had been lying to him and that she did not get the money from anyone by that name. Mendoza instead explained she received the money from another person she knew but whose name she could not pronounce and had no means of contacting. Mendoza further said that she paid Haman ten dollars to cash the one hundred dollar bill for smaller bills.

Mendoza was charged with one count of forgery, Idaho Code § 18-3601, with a persistent violator enhancement, I.C. § 19-2514. At trial, she testified that she found $240, including the two one hundred dollar bills, in the restroom of a store in an envelope with the name "Peggy" written on it. Mendoza admitted to lying to the officer in her previous explanations on how she acquired the money. She said she lied to the officer because she believed she could be arrested for keeping the money that she found. Mendoza was found guilty on the forgery charge and the district court entered a judgment of conviction and a unified sentence of fifteen years with two years determinate. Mendoza filed an Idaho Criminal Rule 35 motion for reduction of sentence, which the district court denied. Mendoza appeals claiming the existence of prosecutorial misconduct and an excessive sentence.

## II.

## DISCUSSION

### A.     Prosecutorial Misconduct

Mendoza asserts that the prosecutor's comments during closing and rebuttal closing arguments were misconduct that rose to the level of fundamental error because it resulted in her being denied due process of law and was in violation of her right to a fair trial guaranteed by the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and Article 1, Section 13 of the Idaho Constitution.[1]  Recently in *State v. Perry*, 150 Idaho 209, 245 P.3d 961 (2010),

---

[1]     With regard to Mendoza's argument that the prosecutor's comments during closing argument violated Article 1, Section 13 of the Idaho Constitution, she does not give any explanation as to why the Idaho Constitution should be interpreted as providing any greater protection than its federal counterpart in this instance. Therefore, we do not discuss it further.

the Idaho Supreme Court clarified the fundamental error doctrine that applies where a defendant asserts that an error occurred at trial–which it explicitly stated included allegations of prosecutorial misconduct. The Court summarized the standards applicable both when there was a contemporaneous objection and when there was not, the latter of which is applicable here:

> If the alleged error was not followed by a contemporaneous objection, it shall only be reviewed by an appellate court under Idaho's fundamental error doctrine. Such review includes a three-prong inquiry wherein the defendant bears the burden of persuading the appellate court that the alleged error: (1) violates one or more of the defendant's unwaived constitutional rights; (2) plainly exists (without the need for any additional information not contained in the appellate record, including information as to whether the failure to object was a tactical decision); and (3) was not harmless. If the defendant persuades the appellate court that the complained of error satisfies this three-prong inquiry, then the appellate court shall vacate and remand.

*Id.* at 228, 245 P.3d at 980. In regard to the harmless error analysis, a defendant bears the burden of proving there is a reasonable possibility that the error affected the outcome of the trial. *Id.* at 226, 245 P.3d at 978.

Closing argument serves to sharpen and clarify the issues for resolution by the trier of fact in a criminal case. *State v. Gross*, 146 Idaho 15, 18, 189 P.3d 477, 480 (Ct. App. 2008); *State v. Timmons*, 145 Idaho 279, 288, 178 P.3d 644, 653 (Ct. App. 2007). Its purpose is to enlighten the jury and to help the jurors remember and interpret the evidence. *Id.* Both sides have traditionally been afforded considerable latitude in closing argument to the jury and are entitled to discuss fully, from their respective standpoints, the evidence and the inferences to be drawn therefrom. *State v. Sheahan*, 139 Idaho 267, 280, 77 P.3d 956, 969 (2003); *Gross*, 146 Idaho at 18, 189 P.3d at 480. This includes the right to express how, from that party's perspective, the evidence confirms or calls into doubt the credibility of particular witnesses. *Sheahan*, 139 Idaho at 280, 77 P.3d at 982. It is improper for a party to present closing argument that misrepresents or mischaracterizes the evidence. *State v. Troutman*, 148 Idaho 904, 911, 231 P.3d 549, 556 (Ct. App. 2010); *State v. Beebe*, 145 Idaho 570, 575, 181 P.3d 496, 501 (Ct. App. 2007). In addition, it constitutes misconduct for a prosecutor to place before the jury facts not in evidence. *State v. Gerardo*, 147 Idaho 22, 26, 205 P.3d 671, 675 (Ct. App. 2009); *State v. Phillips*, 144 Idaho 82, 86, 156 P.3d 583, 587 (Ct. App. 2007). Statements are not misconduct when it is apparent from the context in which the challenged statements were made that the prosecutor was analyzing the evidence and stating the conclusions that he urged the jury to draw

3

from the evidence. *State v. Felder*, 150 Idaho 269, 275-76, 245 P.3d 1021, 1026-27 (Ct. App. 2010).

Mendoza asserts that the prosecutor gave an "impermissible personal opinion" regarding the truth or falsity of Mendoza's testimony during closing argument. In particular, Mendoza argues that the prosecutor committed misconduct when he stated:

> [Defense counsel] is correct in that if you believe completely Miss Mendoza's story that she told yesterday on the stand, it does cover a whole lot of things. It explains a whole lot of things, but she also had four months to think of this story and to build this story so that she could, in fact, cover all of those bases.

Mendoza argues that the prosecutor's comments were not directed toward the evidence or an inference drawn therefrom, but instead, the prosecutor expressed his opinion that Mendoza was lying. Mendoza further argues that this misconduct deprived her of a fair trial because it interfered with the jury's ability to determine credibility.

Instructive on this issue is *Portuondo v. Agard*, 529 U.S. 61, 63-73 (2000). In that case, the United States Supreme Court concluded that when the prosecutor, in her closing argument, commented on the fact that the defendant had the opportunity to hear all of the other witnesses testify and tailor his testimony accordingly, it did not violate the defendant's due process rights. Instead, the Supreme Court determined that the prosecutor's comments were concerned with the defendant's credibility as a witness and were consistent with the rule that when a defendant takes the stand, "his credibility may be impeached and his testimony assailed like that of any other witness." *Id.* at 69.

Here, when the prosecutor made the comment about how Mendoza had time to think about and plan her testimony, he was merely assailing Mendoza's credibility. He did not inject any personal opinions about Mendoza lying; he simply invited the jury to make an inference from the evidence presented at trial which included the fact that Mendoza had already admitted to lying twice before with regard to how she acquired the counterfeit bills. Mendoza has failed to demonstrate that this comment was misconduct, much less that it violated her unwaived constitutional right to a fair trial, and therefore failed to show fundamental error.

Mendoza also asserts that the prosecutor committed misconduct when he commented on Mendoza's failure to present evidence of her innocence at trial. During rebuttal closing argument, the prosecutor stated:

4

We know that, and I think [defense counsel] termed it, that she started out with a white lie, that this was basically just a lapse in moral judgment. But, you have to ask yourself, once she's lied and we know that she's lied, how do we know when she is telling the truth? She told you that she found this envelope, that she didn't just leave the envelope, didn't throw the envelope away. She kept the envelope, crumpled it up and put it in her purse, but where is that envelope now? She hasn't produced it.

She also talked about talking with a daughter about this incident, that she confided in this daughter. Where is the daughter to come in and testify and corroborate that Miss Mendoza talked to her?

Mendoza argues that the prosecutor's argument that she failed to produce the envelope and call her daughter as a witness at trial impermissibly shifted the burden of proof onto her to prove her innocence.

Direct and indirect comments on the defendant's failure to testify at trial are forbidden. "The rule, however, does not extend to comments on the state of the evidence or on the failure of the defense to introduce material evidence or to call logical witnesses." *State v. Hodges*, 105 Idaho 588, 592, 671 P.2d 1051, 1055 (1983). Similarly, "[a] prosecutor's comment on a defendant's failure to call a witness does not shift the burden of proof, and is therefore permissible, so long as the prosecutor does not violate the defendant's Fifth Amendment rights by commenting on the defendant's failure to testify." *United States v. Cabrera*, 201 F.3d 1243, 1250 (9th Cir. 2000).

Here, the prosecutor's reference to the envelope and the lack of testimony by Mendoza's daughter were not impermissible comments that shifted the burden to Mendoza to prove her own innocence. We note that the comments did not refer to Mendoza's right to silence because, in fact, Mendoza did testify. The prosecutor was simply drawing attention to Mendoza's failure to introduce material evidence or to call logical witnesses. *See Hodges*, 105 Idaho at 592, 671 P.2d at 1055. Mendoza testified that she put the envelope with "Peggy" written on it in her purse after she found it in the restroom of a store. This evidence was material to the issue of whether the jury believed that was how she actually acquired the counterfeit money. Mendoza also testified that she felt guilty about keeping the money she found and that she had shared these feelings with her daughter. Mendoza's daughter would have been a logical witness to corroborate her story of how she acquired the money. Therefore, it was not improper for the prosecutor to comment on the whereabouts of the envelope and why it had not been produced at trial, or to comment on the fact that Mendoza's daughter did not testify at trial. Mendoza has failed to

demonstrate that these comments were misconduct, much less that they violated her unwaived constitutional right to a fair trial. Therefore, Mendoza has failed to demonstrate fundamental error.

**B.      Excessive Sentence**

Mendoza asserts that the district court abused its discretion when it imposed an excessive sentence. An appellate review of a sentence is based on an abuse of discretion standard. *State v. Burdett*, 134 Idaho 271, 276, 1 P.3d 299, 304 (Ct. App. 2000). Where a sentence is not illegal, the appellant has the burden to show that it is unreasonable, and thus a clear abuse of discretion. *State v. Brown,* 121 Idaho 385, 393, 825 P.2d 482, 490 (1992). A sentence may represent such an abuse of discretion if it is shown to be unreasonable upon the facts of the case. *State v. Nice*, 103 Idaho 89, 90, 645 P.2d 323, 324 (1982). A sentence of confinement is reasonable if it appears at the time of sentencing that confinement is necessary "to accomplish the primary objective of protecting society and to achieve any or all of the related goals of deterrence, rehabilitation or retribution applicable to a given case." *State v. Toohill*, 103 Idaho 565, 568, 650 P.2d 707, 710 (Ct. App. 1982). Where an appellant contends that the sentencing court imposed an excessively harsh sentence, we conduct an independent review of the record, having regard for the nature of the offense, the character of the offender, and the protection of the public interest. *State v. Reinke*, 103 Idaho 771, 772, 653 P.2d 1183, 1184 (Ct. App. 1982). When reviewing the length of a sentence, we consider the defendant's entire sentence. *State v. Oliver*, 144 Idaho 722, 726, 170 P.3d 387, 391 (2007).

Mendoza argues that the district court failed to consider mitigating factors in determining an appropriate sentence. These factors consist of numerous letters of support, the positive attributes of her character including her ability to turn her life around and become a certified nursing assistant (CNA), and the fact that she has held down a number of successful jobs after being previously incarcerated.

The district court imposed a unified fifteen-year sentence with two years determinate for Mendoza's judgment of conviction of forgery with a persistent violator enhancement. The district court stated that it reviewed the presentence report, the addendum to the presentence report which included several letters of support, and information from the Department of Correction from Mendoza's previous incarceration, including her parole paperwork and certificates of accomplishment. After considering Mendoza's character and her positive

6

attributes, including her ability to become a CNA, the district court determined that Mendoza's character weighed heavily against her because of all the inconsistencies in her stories and that the positive aspects of her life could not outweigh her continuous involvement with the criminal justice system. The district court concluded:

> I do believe that there is an undue risk that during a period of probation that you would violate probation and that you are a continued risk of criminal offense to this community. I believe that given the nature of the persistent violator offense in this case that a sentence of less than what I'm going to impose would depreciate the seriousness of this offense.

Mendoza's argument that the district court failed to consider mitigating factors during sentencing has no merit. After considering both her character and positive attributes, among other factors, the district court determined that those factors did not weigh in her favor and sentenced her accordingly. Mendoza has failed to establish that the district court imposed an excessive sentence and therefore has failed to demonstrate that the district court abused its discretion.

## C.     Rule 35 Motion

Mendoza also asserts that the district court abused its discretion when it denied her Rule 35 motion for a reduction of sentence. A motion for reduction of sentence under Rule 35 is essentially a plea for leniency, addressed to the sound discretion of the court. *State v. Knighton*, 143 Idaho 318, 319, 144 P.3d 23, 24 (2006); *State v. Allbee*, 115 Idaho 845, 846, 771 P.2d 66, 67 (Ct. App. 1989). In presenting a Rule 35 motion, the defendant must show that the sentence is excessive in light of new or additional information subsequently provided to the district court in support of the motion. *State v. Huffman*, 144 Idaho 201, 203, 159 P.3d 838, 840 (2007). In conducting our review of the grant or denial of a Rule 35 motion, we consider the entire record and apply the same criteria used for determining the reasonableness of the original sentence. *State v. Forde*, 113 Idaho 21, 22, 740 P.2d 63, 64 (Ct. App. 1987); *State v. Lopez*, 106 Idaho 447, 449-51, 680 P.2d 869, 871-73 (Ct. App. 1984).

In support of her Rule 35 motion, Mendoza wrote a letter to the district court arguing the court failed to properly consider her letters of support, her "certificates or acknowledgements," and the fact that she had previously completed parole successfully without any violations. She also argued that the presentence investigator "twisted" her words. However, Mendoza has failed to detail what was "twisted" and has failed to provide any new evidence or information to show

that her sentence was excessive.  Therefore, the district court did not abuse its discretion in denying Mendoza's Rule 35 motion.

## III.

## CONCLUSION

The prosecutor's comments during closing argument were not misconduct because they properly addressed credibility issues and the absence of material evidence.  The district court did not abuse its discretion in imposing sentence or by denying Mendoza's Rule 35 motion for reduction of sentence.  Accordingly, we affirm Mendoza's judgment of conviction and sentence.

Chief Judge GRATTON and Judge LANSING **CONCUR.**