IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket No. 39227

| | |
|---|---|
| STATE OF IDAHO, | ) 2013 Unpublished Opinion No. 805 |
| | ) |
| Plaintiff-Respondent, | ) Filed: December 30, 2013 |
| | ) |
| v. | ) Stephen W. Kenyon, Clerk |
| | ) |
| RONALD E. ANDERSON, | ) THIS IS AN UNPUBLISHED |
| | ) OPINION AND SHALL NOT |
| Defendant-Appellant. | ) BE CITED AS AUTHORITY |
| | ) |

Appeal from the District Court of the Second Judicial District, State of Idaho, Idaho County. Hon. Michael J. Griffin, District Judge.

Judgment of conviction for rape, affirmed.

Sara B. Thomas, State Appellate Public Defender; Brian R. Dickson, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; John C. McKinney, Deputy Attorney General, Boise, for respondent.

_____

GUTIERREZ, Chief Judge

Ronald E. Anderson appeals from his judgment of conviction entered upon a jury verdict finding him guilty of rape. For the reasons set forth below, we affirm.

## I.

## FACTS AND PROCEDURE

Anderson and S.M. were employees at a remote Idaho lodge. Following an incident at S.M.'s employee residence near the lodge, which occurred shortly after midnight on June 5, 2008, Anderson was charged with raping S.M. by force or violence, Idaho Code § 18-6101(3). In our unpublished opinion in a previous appeal in the case, we summarized the evidence presented at trial:

> At trial S.M. acknowledged that she had consumed some vodka before going to the bar and four beers while at the bar, but she denied being drunk. She said that on getting back to her trailer, she spoke to [Jason Black, S.M.'s roommate and fellow employee] but said nothing about asking him to invite Anderson to the trailer. She testified that she fell asleep on the couch before

1

Black left and awoke to discover Anderson sitting on the end of the couch with his pants down. She testified that Anderson attacked her and that she struggled, but that Anderson overpowered her and raped her. She said that when she tried to push his face away Anderson bit her finger and when she tried to scream, he punched her in the face. She said that this occurred four or five times. S.M. said that she was ultimately able to distract Anderson and run to another nearby trailer for help. A resident of that trailer, [Richard MacDuff] testified that S.M. burst into his trailer naked from the waist down, crying hysterically. He said that S.M.'s face was bruised, and blood was dripping from a cut on her lip. He said that when he saw her two hours earlier she had no injuries on her face. [MacDuff] contacted the lodge manager and asked him to call the police.

An Idaho State patrol officer [Officer Stanton J. Wiggins] responded within minutes. He testified that S.M. was crying and upset, and that she had cuts on her lips, one of which was severe. The officer described the cuts as "very recent injuries" and "fresh" and that S.M. looked "brutalized" and "beat up." The officer also observed a cut to S.M.'s finger and said that the wound looked like a bite mark. He described it as "fresh" and still bleeding. The officer took photographs of S.M.'s face and finger, and these photos, which were admitted into evidence at trial, confirm his description of the injuries. The officer's photographs of the scene of the attack were also admitted at trial. One shows the victim's pants laying on the floor and turned inside out, as though they had been peeled off of her. Other pictures show the room in disarray, indicating a struggle. A week later, the officer returned to the lodge and took a picture of bruises that had appeared on S.M.'s chest. These photos also were placed in evidence.

S.M. was taken to a hospital, located some distance away, for examination. A nurse practitioner testified that S.M. was tearful and tired and said that she had been raped. The nurse practitioner confirmed numerous cuts on S.M.'s lips, which she described as "somewhat fresh," in part because there remained dried blood in the wounds, but offered that "as far as, like, giving an exact time that is not something I feel qualified to do." The nurse also confirmed an injury to S.M.'s finger, which she described as consistent with a bite mark. The nurse also described abrasions on S.M.'s buttocks and thighs and took several photographs of the injuries, which were also admitted into evidence at trial.

A detective with the Idaho County Sheriff's Department testified that shortly after the incident, and under authority of a search warrant, he transported Anderson to the hospital for a physical examination. The detective said that while awaiting the results of a rape kit examination, Anderson admitted that he had sexual intercourse with S.M. but said that it was consensual.

Anderson testified at trial. He said that S.M. had shown him an injury to the inside of her mouth earlier in the evening and that she said she had sustained the injury when she fell while drunk. He contended that while in the bar, S.M. made sexual advances towards him. Anderson said that after S.M. departed, Black came to the bar and told Anderson that S.M. wanted to "get with" him, that he returned to the trailer with Black, and that when they entered S.M. was sitting on the couch wide awake. According to Anderson, Black then left, and Anderson and S.M. had consensual sex. Anderson contended that additional injuries to

2

S.M.'s mouth occurred when his head accidently hit her mouth during sex. Anderson testified that after they had sex, S.M. started acting "weird" and said "they set you up." Anderson said that while he was in the bathroom, S.M. left. Shortly thereafter, Anderson contended, two lodge employees, one of them Jason Black, attacked him while hurling racial slurs.

Another lodge employee [Phil Wessler] testified for the defense. This witness said that while he was in the bar with Anderson, Black came in and told Anderson that S.M. wanted to "hook up" with Anderson and that Black wanted to "introduce" the two. The witness also said that, immediately after the incident but before his arrest, Anderson had told him that a couple of lodge employees had "jumped" him.

*State v. Anderson*, Docket No. 36319 (Ct. App. Aug. 25, 2010) (unpublished).

The jury found Anderson guilty as charged. He filed motions for a new trial and for a judgment of acquittal notwithstanding the verdict. The district court held a hearing on the motions, after which it granted the defense a sum of money to locate Black, who could not be found in order to testify at trial. Black was located and Anderson moved for a new trial on the basis that Black's testimony was newly discovered evidence that would probably lead to an acquittal. After a hearing, the district court granted the motion. The State appealed to this Court, and we reversed, determining the district court erred in finding that Black's testimony, had it been produced at trial, probably would have led to an acquittal. Upon remand, the district court entered a judgment of conviction and sentenced Anderson to a unified term of eighteen years, with nine years determinate. Anderson now appeals.

## II.

## ANALYSIS

### A. Preservation of Jury Instructions

Anderson contends the district court's failure to preserve the post-proof jury instructions in the record deprived him of an adequate record for review and violated his right to due process. A defendant in a criminal case has a due process right to a record on appeal that is sufficient for adequate appellate review of the errors alleged regarding the proceedings below. *State v. Strand*, 137 Idaho 457, 462, 50 P.3d 472, 477 (2002); *State v. Morgan*, 153 Idaho 618, 621, 288 P.3d 835, 838 (Ct. App. 2012).

Both parties agree that the written post-proof jury instructions, numbered nine through twenty, are missing from the appellate record and cannot be located. The trial transcript contains the entirety of the district court's verbal instructions to the jury, but Anderson contends the

3

record is still insufficient because he cannot review the language in the written instructions or the manner in which they were presented. He does not make any specific contentions that the written instructions were, in some manner, erroneous; he only contends that he does not have the opportunity to review them and therefore his ability to pursue his appeal is prejudiced. Thus, Anderson argues that the exclusion of jury instructions from an appellate record constitutes a per se reversible error necessitating a new trial.

We certainly do not dispute Anderson's assertion that written instructions can be erroneous. *See, e.g.*, *State v. Draper*, 151 Idaho 576, 591-92, 261 P.3d 853, 868-69 (2011) (holding it was reversible error where an element of the crime was misnumbered in the written instruction such that it may have effectively omitted several elements from the instruction). However, we are unconvinced that just because such an error is *possible*, the mere fact jury instructions are excluded from the record amounts to per se reversible error without a showing of prejudice. In *State v. Wright*, 97 Idaho 229, 231, 542 P.2d 63, 65 (1975), the appellant contended the failure of the court to record the closing arguments at trial, which was contrary to the statutory requirement that all oral proceedings be recorded unless waived by the parties, was prejudicial and resulted in a lack of fundamental fairness violating his right to due process. The Supreme Court recognized "[t]he importance and significance of judicial records," noting, "District courts, as courts of record, speak only through their records." *Id*. However, the Court disagreed that the failure to record the closing arguments was a per se denial of due process. *Id*. "Error in the abstract," the Court continued, "does not necessarily rise to the level of constitutional dimensions unless and until a defendant properly presents specific prejudice resulting from such error." *Id*. The Court then quoted *Brown v. United States*, 314 F.2d 293 (9th Cir. 1963):

> ". . . we would think failure to record counsel's summation, without more, though error 'is an error which is neither jurisdictional nor constitutional. It is not a fundamental defect which inherently results in a complete miscarriage of justice, nor an omission inconsistent with the rudimentary demands of fair procedure.'" (Quoting *Hill v. United States*, 368 U.S. 424, 428 . . . (1962).)

*Wright*, 97 Idaho at 231, 542 P.2d at 65 (quoting *Brown*, 314 F.2d at 295 n.1). The Court ultimately held it could not presume prejudicial error lay hidden in the unreported portion of counsel's closing argument; specifically, it could not presume the prosecutor committed misconduct in closing argument. *Wright*, 97 Idaho at 233, 542 P.2d at 67.

4

Anderson cites several cases in support of his assertion that the "Idaho Supreme Court has consistently held that, when the inadequate appellate record is caused by the district court's failure to maintain an adequate record below, that violates the defendant-appellant's due process rights by depriving the proceedings of the necessary fundamental fairness": *State v. Zielinski*, 119 Idaho 316, 318, 805 P.2d 1240, 1242 (1991); *Martinez v. State*, 92 Idaho 148, 149-50, 438 P.2d 893, 894-95 (1968); *Ebersole v. State*, 91 Idaho 630, 636, 428 P.2d 947, 953 (1967). These cases, however, are distinguishable from the circumstances here and do not support Anderson's assertion that a reversal is required whenever the record on appeal is incomplete due to no fault of the appellant. In *Zielinski*, 119 Idaho 316, 805 P.2d 1240, the Supreme Court reversed the conviction because there was no record of the detective's testimony that established probable cause for a search warrant, and thus, the defendant had no ability to challenge the probable cause finding. In both *Martinez*, 92 Idaho 148, 438 P.2d 893, and *Ebersole*, 91 Idaho 630, 428 P.2d 947, the Supreme Court reversed the convictions where there was a failure to maintain a transcript and/or court minutes of the arraignments, which the respective appellants argued deprived them of the ability to prove they did not knowingly or intelligently waive their right to counsel. In each of the above cases, counsel was not present at the proceedings missing in the transcript. In *State v. Polson*, 92 Idaho 615, 620-21, 448 P.2d 229, 234-35 (1968), the Supreme Court noted the significance of that fact in distinguishing *Martinez* where Polson argued he was denied due process because the record did not contain the transcript of oral proceedings occurring after the tape recorder failed. The Court found, unlike in *Martinez*, where the appellant was challenging the fact the record did not affirmatively show he had understandingly waived his right to counsel, Polson was "ably represented" by counsel at trial and on appeal. *Polson*, 92 Idaho at 621, 448 P.2d at 235. The Court therefore concluded no constitutional right had been denied Polson and no prejudice was shown by the failure of the tape record, determining the case fell "within the ambit of the *Ricks* cases rather than the *Martinez* case." *Polson*, 92 Idaho at 621, 448 P.2d at 235 (footnote omitted) (citing *State v. Ricks*, 34 Idaho 122, 135-36, 201 P. 827, 831 (1921) (holding a court reporter's death and subsequent loss of notes making it impossible to procure a trial transcript is not grounds for reversing a criminal judgment on due process grounds); *State v. Ricks*, 32 Idaho 232, 180 P. 257 (1919) (holding the Court did not have jurisdiction to grant a new trial where the court reporter died and the trial transcript could not be produced for appeal).

5

Here, Anderson, who was represented by counsel throughout trial (including when the jury instructions were submitted and finalized), does not assert any specific prejudice arising from the missing jury instructions--aside from an assertion they *may* have contained errors. Such an assertion is merely speculation and does not rise to the level of a constitutional violation requiring reversal of his conviction.

## B.        Prosecutorial Misconduct

Anderson contends the prosecutor committed misconduct during closing arguments by misstating the law, disparaging defense counsel and defense theory of the case, improperly vouching for the evidence, and commenting on the veracity of Anderson's testimony. The misconduct, he asserts, abridged his constitutional rights to due process and a fair trial.

Anderson concedes none of the instances of alleged prosecutorial misconduct were objected to at trial. When there is no contemporaneous objection, a conviction will be reversed for prosecutorial misconduct only if the conduct is sufficiently egregious so as to result in fundamental error. *State v. Perry*, 150 Idaho 209, 228, 245 P.3d 961, 980 (2010); *State v. Field*, 144 Idaho 559, 571, 165 P.3d 273, 285 (2007); *State v. Wright*, 153 Idaho 478, 488, 283 P.3d 795, 805 (Ct. App. 2012); *State v. Betancourt*, 151 Idaho 635, 639-40, 262 P.3d 278, 282-83 (Ct. App. 2011). As a threshold, we must determine factually if there was prosecutorial misconduct. *See Field*, 144 Idaho at 571, 165 P.3d at 285; *Wright,* 153 Idaho at 489, 283 P.3d at 806. Then, to find prosecutorial misconduct constitutes fundamental error, the defendant bears the burden of establishing that the error: (1) violates one or more of the defendant's unwaived constitutional rights; (2) plainly exists without the need for additional information not contained in the appellate record; and (3) was not harmless. *Perry*, 150 Idaho at 228, 245 P.3d at 980; *Betancourt*, 151 Idaho at 639-40, 262 P.3d at 282-83. If the alleged error satisfies the first two elements of the *Perry* test, the error is reviewable. *Perry*, 150 Idaho at 226, 245 P.3d at 978. To obtain appellate relief, however, the defendant must further persuade the reviewing court that the error was not harmless--*i.e.*, that there is a reasonable possibility the error affected the outcome of the trial and thereby prejudiced the defendant. *State v. Whitaker*, 152 Idaho 945, 951, 277 P.3d 392, 398 (Ct. App. 2012).

Although our system of criminal justice is adversarial in nature, and the prosecutor is expected to be diligent and leave no stone unturned, he or she is nevertheless expected and required to be fair. *Field*, 144 Idaho at 571, 165 P.3d at 285; *Betancourt*, 151 Idaho at 639, 262

P.3d at 282. However, in reviewing allegations of prosecutorial misconduct we must keep in mind the realities of trial. *Field*, 144 Idaho at 571, 165 P.3d at 285; *Betancourt*, 151 Idaho at 639, 262 P.3d at 282. A fair trial is not necessarily a perfect trial. *Field*, 144 Idaho at 571, 165 P.3d at 285; *Betancourt*, 151 Idaho at 639, 262 P.3d at 282. Closing argument serves to sharpen and clarify the issues for resolution by the trier of fact in a criminal case. *Betancourt*, 151 Idaho at 639, 262 P.3d at 282; *State v. Phillips*, 144 Idaho 82, 86, 156 P.3d 583, 587 (Ct. App. 2007). Its purpose is to enlighten the jury and to help the jurors remember and interpret the evidence. *Phillips*, 144 Idaho at 86, 156 P.3d at 587; *State v. Reynolds*, 120 Idaho 445, 450, 816 P.2d 1002, 1007 (Ct. App. 1991). Both sides have traditionally been afforded considerable latitude in closing argument to the jury and are entitled to discuss fully, from their respective standpoints, the evidence and the inferences to be drawn therefrom. *State v. Sheahan*, 139 Idaho 267, 280, 77 P.3d 956, 969 (2003); *Betancourt*, 151 Idaho at 639, 262 P.3d at 282; *Phillips*, 144 Idaho at 86, 156 P.3d at 587. Whether comments during closing arguments rise to the level of fundamental error is a question that must be analyzed in the context of the trial as a whole. *State v. Carson*, 151 Idaho 713, 718, 264 P.3d 54, 59 (2011); *State v. Severson*, 147 Idaho 694, 720, 215 P.3d 414, 440 (2009). The relevant question is whether the prosecutor's comments so infected the trial with unfairness as to make the resulting conviction a denial of due process. *Darden v. Wainwright*, 477 U.S. 168, 181 (1986); *Carson*, 151 Idaho at 718-19, 264 P.3d at 59-60.

### 1.    Misstating the law

Anderson contends the prosecutor committed misconduct by misstating the law in regard to the burden of proof. It is prosecutorial misconduct to misrepresent the State's burden to prove an accused's guilt beyond a reasonable doubt. *State v. Herrera*, 152 Idaho 24, 31, 266 P.3d 499, 5086 (Ct. App. 2011); *Phillips*, 144 Idaho at 86, 156 P.3d at 587; *State v. Lovelass*, 133 Idaho 160, 168, 983 P.2d 233, 241 (Ct. App. 1999). The requirement that the State prove every element of a crime beyond a reasonable doubt is grounded in the constitutional guarantee of due process. *Jackson v. Virginia*, 443 U.S. 307, 313-14 (1979); *State v. Felder*, 150 Idaho 269, 274, 245 P.3d 1021, 1026 (Ct. App. 2010). This standard of proof plays a vital role in the American scheme of criminal procedure because it provides concrete substance for the presumption of innocence--that bedrock axiomatic and elementary principle whose enforcement lies at the foundation of the administration of our criminal law. *In re Winship*, 397 U.S. 358, 363 (1970); *Felder*, 150 Idaho at 274, 245 P.3d at 1026.

7

Anderson points to two statements by the prosecutor made during rebuttal argument that he contends improperly shifted the burden of proof. The first came in the context of the prosecutor arguing that the defense theory attacking the State's case were unavailing. After discounting the defenses raised by counsel, the prosecutor told the jury that defense counsel was "just doing his job, but his job is to try to make you believe there's no evidence here, and there's more than substantial evidence to find Mr. Anderson guilty." The next statement occurred after the prosecutor told the jury he was a criminal defense attorney for fifteen years and had been a prosecutor for four years, and that "this is some of the best evidence I've presented." The prosecutor then stated: "And you've got to come up with something. If you're the defense, what do you do? You've got to attack. You can't just sit back and say nothing. You've got to come up with some story." Our Supreme Court has made clear that prosecutorial statements distorting the reasonable doubt and proof standards do not constitute reversible error where the jury was properly instructed as to the reasonable doubt standard. In *Carson*, 151 Idaho at 718, 264 P.3d at 59, Carson contended that unobjected-to comments by the prosecutor during closing argument, if followed by the jury, would have permitted the jury to convict him upon proof that was less than beyond a reasonable doubt. The Idaho Supreme Court found no reversible error, reasoning that, even if the prosecutor's comments were improper, the district court properly instructed the jury on reasonable doubt. *Id.* The Court presumed the jury followed the jury instructions given by the trial court in reaching its verdict, and there was no indication the jury did not follow the court's instructions. *Id. Accord State v. Thumm*, 153 Idaho 533, 544, 285 P.3d 348, 359 (Ct. App. 2012) (relying on *Carson* to hold that the prosecutor's unobjected-to statements mischaracterizing the State's burden of proof did not constitute reversible error where the jury was properly instructed and it was presumed the jury followed those instructions).

Likewise in this case, the jury was instructed on the meaning of reasonable doubt and that the State bears the burden of proving the defendant is guilty beyond a reasonable doubt. The district court also instructed the jury it must follow the instructions regardless of "what either side may state the law to be." We presume the jury followed the jury instructions given by the trial court in reaching its verdict. *Carson*, 151 Idaho at 718, 264 P.3d at 59. Further, as in *Carson*, there is no indication the jury did not follow the district court's instructions. Therefore, although we do not condone the prosecutor's statements in this regard, Anderson's argument that they amounted to fundamental error fails.

8

## 2.      Disparaging the defense

Anderson also contends the prosecutor erred by disparaging the defense and its theory of the case.  The prosecutor's closing argument should not include disparaging comments about opposing counsel.  *State v. Timmons*, 145 Idaho 279, 289, 178 P.3d 644, 654 (Ct. App. 2007); *Phillips*, 144 Idaho at 86, 156 P.3d at 587.  *See also Sheahan*, 139 Idaho at 280, 77 P.3d at 969.

Anderson points to the prosecutor's statements during rebuttal that he contends improperly disparaged the defense theory, including the assertions that the defense presented a "terrible story" and a "ridiculous argument."   Anderson also takes issue with the following statement by the prosecutor:  "You know, when the defense doesn't have--when they have a defendant that comes up with an unbelievable story they've got to use smoke and mirrors.  They've got to attack the State."  These statements were not personal attacks on defense counsel, but rather were comments as to the defense theory of the case, especially Anderson's testimony.  Such comments do not amount to misconduct.  *See State v. Norton*, 151 Idaho 176, 188-89, 254 P.3d 77, 89-90 (Ct. App. 2011) (holding that the prosecutor's statements referring to some of defense counsel's arguments as "red herrings and smoke and mirrors" was not misconduct because the comments were not directed at defense counsel personally, but were comments on the defense theories).

Anderson also argues the following statement by the prosecutor in rebuttal was disparaging to the defense:

> I found it interesting, too, that [defense counsel] in his closing . . . hardly even mentioned Mr. Anderson's testimony.  There was [sic] only one or two references to when he testified about his story.  I find that interesting.  I mean, all he did was argue to you that the police didn't do a good job.  He never . . . talked to you about his client's version of the events except one or two times.  Why?  Because it's an unbelievable story.  And it's uncredible [sic], and it doesn't look good to stand up there and talk about his client's story, because he knows--I would submit to you the reason is . . . *because he knows it's not a good story*.

(Emphasis added.)  This statement, Anderson contends, disparages defense counsel because it suggests that defense counsel knowingly elicited false testimony.

We do not read this statement as particularly personally disparaging to defense counsel. In context, the overriding intent of the latter part of the statement is as a comment on the credibility of Anderson's testimony as opposed to a personal attack on defense counsel.  As opposed to personally disparaging defense counsel, this statement addresses the believability of

9

Anderson's version of what occurred. Any inference that defense counsel knowingly elicited false testimony was obscured by the prosecutor's true intent of attacking Anderson's "story." *Cf. Sheahan*, 139 Idaho at 280, 77 P.3d at 969 (holding statements by the prosecution during closing arguments that defense counsel "tried to hide the facts and to mislead" the jury as well as a statement that defense counsel "tried to establish something that is not in evidence by his argument[,] [a]pparently acceding to that other maxim that if you tell a lie enough times and often enough, people are going to believe it" personally disparaged defense counsel and amounted to misconduct). Accordingly, this statement did not amount to misconduct. Anderson has not shown the prosecutor committed misconduct by disparaging defense counsel and the defense theory of the case.

### 3. Vouching

Finally, Anderson contends the prosecutor committed misconduct by vouching for the credibility and sufficiency of the State's evidence and asserting that Anderson's testimony was not credible. He points to several instances of alleged improper vouching by the prosecutor, which he asserts rises to the level of fundamental error.

Closing argument should not include counsel's personal opinions and beliefs about the credibility of a witness or the guilt or innocence of the accused. *State v. Wheeler*, 149 Idaho 364, 369, 233 P.3d 1286, 1291 (Ct. App. 2010); *Phillips*, 144 Idaho at 86, 156 P.3d at 587. A prosecuting attorney may express an opinion in argument as to the truth or falsity of testimony or the guilt of the defendant when such opinion is based upon the evidence, but the prosecutor should exercise caution to avoid interjecting his or her personal belief and should explicitly state that the opinion is based solely on inferences from evidence presented at trial. *Wheeler*, 149 Idaho at 369, 233 P.3d at 1291; *Phillips*, 144 Idaho at 86 n.1, 156 P.3d at 587 n.1. The safer course is for a prosecutor to avoid the statement of opinion, as well as the disfavored phrases "I think" and "I believe" altogether. *Wheeler*, 149 Idaho at 369, 233 P.3d at 1291; *Phillips*, 144 Idaho at 86 n.1, 156 P.3d at 587 n.1.

We first address the statements Anderson contends constituted fundamental error because they constituted improper vouching by the prosecutor that the evidence presented by Anderson was not credible. In rebuttal argument, while discussing Anderson's assertion that S.M. had been injured from a fall several days prior to the incident, the prosecutor stated: "So to bring this out--again, when you don't have a good story to tell, and Mr. Anderson has had a long time to

come up with a good story, and *that was a terrible story*. I'm surprised he didn't come up with something better." (Emphasis added.) The prosecutor also explained why he only asked two questions of Anderson on cross-examination:

> I didn't need to ask any more questions. That story that Mr. Anderson told you was *so unbelievable and uncredible* [sic] there was no reason to cross him. And I gladly ask you to bring your own common sense into this case, because if you do *there's no way in the world you can believe Mr. Anderson's story.*

(Emphasis added.) Finally, the prosecutor stated:

> I found it interesting . . . that [defense counsel] in his closing . . . hardly even mentioned Mr. Anderson's testimony. . . . He never . . . talked to you about his client's version of the events except one or two times. Why? *Because it's an unbelievable story. And it's uncredible* [sic], and it doesn't look good to stand up there and talk about his client's story, because he knows--I would submit to you the reason is . . . because he knows it's not a good story.

(Emphasis added.)

These statements do not constitute prosecutorial misconduct. Although a prosecutor is prohibited from asserting his or her *personal opinions and beliefs* about the credibility of a witness or the guilt or innocence of the accused, *Wheeler*, 149 Idaho at 369, 233 P.3d at 1291; *Phillips*, 144 Idaho at 86, 156 P.3d at 587, a prosecutor has the right to identify how, from the prosecutor's perspective, the *evidence* confirms or calls into doubt the credibility of a particular witness. *Felder*, 150 Idaho at 275, 245 P.3d at 1027; *Lovelass*, 133 Idaho at 168, 983 P.2d at 241. The prosecutor's statements as to Anderson's credibility were not based on the prosecutor's personal opinion, but were made in reference to the evidence, namely the content of Anderson's testimony. In arguing that Anderson's "story" was unbelievable, the prosecutor pointed to Anderson's contention, which the prosecutor contended defied common sense, that S.M.'s injuries were the result of consensual "rough sex," a previous fall, and/or her run through the gravel and brush after the incident. The freshness and severity of the injuries, the prosecutor argued, made Anderson's testimony in this regard unbelievable.

Our decision in *State v. Mendoza*, 151 Idaho 623, 627, 262 P.3d 266, 270 (Ct. App. 2011), is instructive. There, Mendoza contended the following comment made by the prosecutor in closing argument was misconduct because it amounted to an "impermissible personal opinion" regarding the truth or falsity of Mendoza's testimony:

> [Defense counsel] is correct in that if you believe completely Miss Mendoza's story that she told yesterday on the stand, it does cover a whole lot of things. It

11

> explains a whole lot of things, but she also had four months to think of this story and to build this story so that she could, in fact, cover all of those bases.

*Id*. at 626, 262 P.3d at 269. We concluded that when the prosecutor made the comment about how Mendoza had time to think about and plan her testimony, he was merely assailing Mendoza's credibility. *Id*. at 627, 262 P.3d at 270. He did not inject any personal opinions about how she was lying, but simply invited the jury to make an inference from the evidence presented at trial, which included that Mendoza had already admitted to lying twice, and therefore, it did not amount to misconduct. *Id*. Similarly in this case, the prosecutor was attacking Anderson's credibility (and "story") based on the evidence, not the prosecutor's personal opinion. Thus, the prosecutor's argument did not amount to misconduct, let alone fundamental error. *Accord Carson*, 151 Idaho at 722, 264 P.3d at 63 (holding the prosecutor did not commit misconduct by bolstering a witness's credibility because the argument was not based on personal opinion but the evidence); *Felder*, 150 Idaho at 272-73, 245 P.3d at 1024-25 (holding the prosecutor's statements regarding the credibility of the victim was not misconduct because they were based on the evidence, not on the prosecutor's personal opinions); *Timmons*, 145 Idaho at 289, 178 P.3d at 654 (holding the prosecutor's statement that he believed a witness's testimony indicated the defendant's guilt was not misconduct because it was a statement based on inferences from the evidence, not on the prosecutor's personal beliefs). *See also Wheeler*, 149 Idaho at 369-70, 233 P.3d at 1291-92 (holding the prosecutor's statements regarding the officer's credibility was not misconduct because it was an argument to the jury of a common sense consideration to factor into the credibility determination).

We next turn to the statements Anderson argues improperly vouched for the credibility and sufficiency of the evidence presented by the prosecutor. The first instance occurred during the State's initial closing argument where the prosecutor stated, "I thought the nurse practitioner was very credible. I think she adds credence to the State's case." Later, during the State's rebuttal argument, when the prosecutor addressed defense counsel's closing argument that questioned S.M.'s testimony regarding the event (including the argument that S.M. did not remember important details of the incident), the prosecutor argued:

> When your lips are cut, when you're scratched, when you got bruises, you're not going to remember everything that happened. You're going to remember the important things, which she did. . . . Again, the defense--he's just doing his job, but his job is to try to make you believe there's no evidence here, and there's more than substantial evidence to find Mr. Anderson guilty. I've also been a

12

criminal defense attorney. *I was a criminal defense attorney for 15 years. I've been a prosecutor for four years, and this in my--this is some of the best evidence I've presented.*

(Emphasis added.) The prosecutor then argued that one of the issues the defense "really can't get around" was all of the injuries suffered by S.M. He continued:

We presented all these photos, all the evidence of these injuries, and the defense--they want to come up with stories how they happened some way else--happened some other way. . . . And they come up with these stories that are not believable, but yet they throw them out to you and want you to believe them. *I mean, my gosh, this is great evidence.*

(Emphasis added.)

The latter comment is somewhat ambiguous; however, we conclude it did not constitute misconduct because it was simply a reference to the breadth of evidence the State presented. *See State v. Jackson*, 151 Idaho 376, 382, 256 P.3d 784, 790 (Ct. App. 2011) ("[A] court should not lightly infer that a prosecutor intends an ambiguous remark to have its most damaging meaning or that a jury, sitting through lengthy exhortation, will draw that meaning from the plethora of less damaging interpretations."). The former two comments, however, are clearly misconduct as they were assertions by the prosecutor as to the credibility of a witness, and of the evidence in general, based on the prosecutor's opinions and beliefs. The second comment is impermissible in that it attempted to bolster the credibility and sufficiency of the evidence with the prosecutor's personal experience, a factor clearly outside the evidence presented in this case. Such an assertion by the prosecutor, that the jury should believe the State's evidence on any basis other than because the State's evidence and theory of the case was more convincing, is improper. *See State v. Gross*, 146 Idaho 15, 20, 189 P.3d 477, 482 (Ct. App. 2008) (holding the prosecutor committed misconduct by making improper arguments that the jury should believe the story of the officer and the prosecutor simply because they were representatives of the State, rather than because the State's evidence and theory of the case was more convincing).

Thus, we must turn to whether this misconduct constituted fundamental error. As noted above, in order to show fundamental error, the defendant bears establishing that the error: (1) violates one or more of the defendant's unwaived constitutional rights; (2) plainly exists without the need for additional information not contained in the appellate record; and (3) was not harmless. *Perry*, 150 Idaho at 228, 245 P.3d at 980.

13

Anderson asserts, without discussion, that this error implicates a constitutional right. The issue, however, has not been definitively decided after *Perry*. *Perry* itself involved a claim that the prosecutor committed misconduct by eliciting testimony from a lay witness as to the credibility of the victim. However, as we recognized in *Jackson*, 151 Idaho at 380, 256 P.3d at 788, the *Perry* Court did not make clear whether this type of error violates a constitutional right of the accused, instead skipping the first prong and finding it was not fundamental error because it was not plain that the failure of counsel to object was not a tactical decision. Addressing the issue for the first time in *Jackson*, this Court determined that elicitation of vouching testimony from a lay witness did not violate a constitutional right of the accused, given its basis in the Idaho Rules of Evidence as opposed to a constitutional provision. *Jackson*, 151 Idaho at 380, 256 P.3d at 788. *Accord Herrera*, 152 Idaho at 34-35, 266 P.3d at 508-09 (eliciting the opinion of a witness as to another witness's credibility is an evidentiary issue that does not constitute a constitutional violation).

Our Supreme Court has hinted, however, that *prosecutorial* vouching for the credibility of a witness is not merely an evidentiary issue, but implicates a constitutional right--implying it is distinct from mere lay witness vouching. Although not making a specific holding in this regard, in *Carson*, 151 Idaho at 721, 264 P.3d at 62, the Court seemed to recognize a constitutional implication of prosecutorial vouching. In addressing the defendant's claim that the prosecutor improperly vouched for a witness's credibility in closing argument, the Court recognized that Idaho Rule of Professional Conduct 3.4 prohibited attorneys from doing so. The Court noted that with respect to due process, however, the United States Supreme Court has explained why the prosecutor cannot vouch for a witness's credibility or express a personal opinion of the defendant's guilt and quoted *United States v. Young*, 470 U.S. 1, 18-19 (1985):

> "The prosecutor's vouching for the credibility of witnesses and expressing his personal opinion concerning the guilt of the accused pose two dangers: such comments can convey the impression that evidence not presented to the jury, but known to the prosecutor, supports the charges against the defendant and can thus jeopardize the defendant's right to be tried solely on the basis of the evidence presented to the jury; and the prosecutor's opinion carries with it the imprimatur of the Government and may induce the jury to trust the Government's judgment rather than its own view of the evidence."

14

*Carson*, 151 Idaho at 721, 264 P.3d at 62 (quoting *Young*, 470 U.S. at 18-19.)[1] Thus, we determine that, unlike the elicitation of an opinion from a lay witness in regard to credibility, vouching by a prosecutor implicates a constitutional right.

Turning to the second prong, the record in this case suggests no reason to conclude defense counsel elected, as a matter of trial strategy, to waive any objection when the prosecutor improperly vouched for the credibility and sufficiency of the evidence presented by the State. *See Jackson*, 151 Idaho at 380, 256 P.3d at 788. Thus, Anderson has satisfied his burden to show the prosecutor's argument violated an unwaived constitutional right *and* that the error is clear or obvious, thereby meeting the first two prongs of the *Perry* test for reversible fundamental error. It remains for us to determine whether the error affected the outcome of the trial.

Where a defendant seeks relief for a constitutional violation to which no objection was made in the trial court, the defendant bears the burden of showing a reasonable possibility that the error affected the outcome of the trial. *Perry*, 150 Idaho at 226, 245 P.3d at 978; *Whitaker*, 152 Idaho at 952, 277 P.3d at 399. Whether trial errors could have affected the outcome of a trial generally depends, in part, upon the strength of the properly admitted evidence of guilt. *Whitaker*, 152 Idaho at 952, 277 P.3d at 399.

Anderson contends this was a close case, and therefore the error was not harmless. He contends the reliability of S.M.'s testimony "was called into question" by other evidence in the record. Anderson points out S.M. had no injuries to her vaginal area, which he contends is highly probative because she testified at trial she was trying to fight off Anderson for thirty to forty-five minutes while he was being "really brutal." S.M. also told Officer Wiggins there was blood all over her blanket and the floor, but the officer testified he did not notice any blood on the floor and "did not deem it necessary" to preserve the blanket as evidence. Anderson also points out S.M. did not inform the nurse practitioner she ran barelegged through foliage and across gravel, which Anderson contends likely impacted the nurse's conclusions regarding the cause of the scratches on S.M.'s legs. Anderson further highlights the fact the nurse testified

---

[1]     The *Carson* Court did not ultimately determine whether the vouching complained of in *Carson* implicated a constitutional right because the Court determined the disputed comments did not amount to improper vouching based on the prosecutor's personal opinion, but was an argument based on the evidence. *State v. Carson*, 151 Idaho 713, 722, 265 P.3d 54, 63 (2011).

S.M. told the nurse she had been bitten multiple times, but at trial, S.M. testified she had only been bitten once. In addition, a detective testified there was no evidence of a struggle on Anderson himself, including no debris or blood under his fingernails. Overall, Anderson contends, there was a lack of physical evidence corroborating S.M.'s testimony.

Anderson also contends the testimony of several independent witnesses belied S.M.'s testimony as to the commotion she was making during the struggle. Wessler testified Anderson came into his trailer at approximately 11:20 p.m.; therefore, Anderson contends, he could not have arrived at S.M.'s trailer until approximately midnight. This calls into question the timeframe S.M. testified to at trial--that the attack lasted a total of thirty to forty-five minutes--which means Anderson would have to have been still assaulting S.M. when MacDuff was walking up to his trailer at approximately 12:30 a.m. However, although S.M. testified she was screaming, fighting, and resisting Anderson throughout the incident, and S.M.'s and MacDuff's trailers were relatively close, MacDuff apparently did not hear anything out of the ordinary. Anderson also argues the evidence showed he did not exhibit guilty behavior following the incident. He points out that he stayed in S.M.'s trailer after she left, believing she intended to return and did not attempt to hide when Officer Wiggins drove past him in a marked police vehicle.

Finally, in arguing there was not overwhelming evidence of his guilt, Anderson points to the district court's skeptical view of the sufficiency of the evidence, as shown by the court's remarks during the hearing on Anderson's motions for a new trial and motion for an acquittal notwithstanding the verdict. We note this Court largely rejected the district court's view of the evidence in the first appeal in this case:

> First and most importantly, the district court was incorrect in its assessment that the case hinged on the victim's credibility because there was a "paucity" of physical evidence. To the contrary, there was abundant physical evidence consisting of photographs of the cuts on S.M.'s lips, bruises and contusions to her face, a bite mark on her finger, bruising to her chest and abrasions on her back and thighs, as well as witness testimony concerning the same. There were also photos of the crime scene showing the room to be in disarray, consistent with a struggle having occurred there.
>
> Second, S.M.'s behavior immediately following the incident, as described by third-party witnesses, was consistent with having been raped, not with consensual sex. [MacDuff] said that S.M. ran into his trailer crying hysterically and naked from the waist down, with blood still dripping from a cut on her lip and blood on her shirt.

*State v. Anderson*, Docket No. 36319 (Ct. App. Aug. 25, 2010) (unpublished).

This Court has found in several cases that prosecutorial misconduct was not harmless and constituted reversible error. In *Gross*, 146 Idaho 15, 189 P.3d 477, this Court found the prosecutor committed misconduct by disparaging defense counsel by implying counsel participated in or facilitated in false statements made by Gross, by suggesting to the jury it should trust and believe the officer and the prosecutor because they represented the State and therefore must be ethical, by improperly vouching for himself and the arresting officer in response to testimony that the audio recording of the stop was missing part of the encounter, and by improperly appealing to the passions or prejudices of the jury by asking the jury to imagine themselves as the victim of Gross's offense. Defense counsel had not objected to any of these statements made during closing argument, but we determined the cumulative effect of the misconduct was not harmless beyond a reasonable doubt.[2] *Id*. at 21, 189 P.3d at 483. Specifically, we determined evidence of Gross's intoxication was not overwhelming, and therefore, we could not say beyond a reasonable doubt the jury would have convicted Gross absent the improper comments. *Id*. at 21-22, 189 P.3d at 483-84.

In *Betancourt*, 151 Idaho at 639, 262 P.3d at 282, where the defendant was convicted of possession of a controlled substance after methamphetamine was found concealed in the vehicle he was driving, we determined the prosecutor committed misconduct by impermissibly commenting on Betancourt's exercise of his Fourth Amendment right to be free from unreasonable searches and seizures. Specifically, the prosecutor argued on two occasions that the jury could see from a video of the stop that Betancourt obviously did not want the law enforcement officers to search his vehicle, thus urging the jury to imply guilt from his invocation of his constitutional right to refuse consent to a search. Applying *Perry's* fundamental error test, we determined Betancourt demonstrated there was a reasonable possibility the impermissible comments affected the outcome of the trial. *Betancourt*, 151 Idaho at 641, 262 P.3d at 284. Specifically, we noted that the pivotal issue in the case was Betancourt's knowledge of the drugs and perhaps the State's strongest evidence in this regard was Betancourt's refusal to allow the officer to search the vehicle; therefore, we concluded it was not harmless error. *Id*.

---

[2]     None of the instances of misconduct were objected to by defense counsel at trial. Thus, we applied the pre-*Perry* fundamental error test.

17

Similarly, in *Phillips*, 144 Idaho at 85, 156 P.3d at 586, we determined the prosecutorial misconduct was not harmless error. There, in closing argument the prosecutor repeatedly suggested the jury might feel "irritated" and "upset" by the testimony of two witnesses. We determined this was improper, inflammatory language appealing to the jury's passion or prejudice. We then concluded it was not harmless, given the conflicting evidence, the fact the case hinged largely on credibility, and the fact the prosecutor, on six occasions in his rebuttal argument, invited the jury to be irritated and upset by the exculpatory testimony of two witnesses. *Id.* at 89, 156 P.3d at 590.

Upon consideration of the preceding cases where we found prosecutorial misconduct was not harmless and thus warranted reversal, we are not convinced this case falls in that category. As we recognized in the previous appeal, the case did not entirely hinge on credibility, as S.M.'s testimony was corroborated by her physical injuries, the condition of the trailer after the incident, the nurse's testimony as to the likely cause of S.M.'s injuries, and the fact S.M. ran, naked from the waist down, to an acquaintance's trailer immediately after the incident to hysterically report she had been raped. In addition, although the prosecutor's statements vouching for the credibility of the nurse and the State's case as a whole were certainly improper, it did not so infect his closing argument such that we are convinced there is a reasonable possibility the statements affected the outcome of the trial and therefore prejudiced Anderson. Accordingly, Anderson has not shown the prosecutor's improper vouching amounted to fundamental error requiring reversal of his conviction.

## C.     Cumulative Error

Anderson also contends that even if the individual errors he complains of are independently harmless, in the aggregate they amount to cumulative error depriving him of his due process right to a fair trial. *See State v. Moore*, 131 Idaho 814, 823, 965 P.2d 174, 183 (1998). However, alleged errors that were not followed by a contemporaneous objection will not be considered under the cumulative error doctrine unless said errors are found to pass the threshold analysis under our fundamental error doctrine. *Perry*, 150 Idaho at 231, 245 P.3d at 983. Here, although we found the prosecutor committed misconduct by improperly vouching and assumed misconduct due to misstatements of the law, these instances of prosecutorial misconduct failed our threshold inquiry for fundamental error and are therefore not properly considered error for purposes of cumulative error review. As such, Anderson has failed to

demonstrate at least two errors, a necessary predicate to the application of our cumulative error doctrine. *See id*. at 231, 245 P.3d at 983.

## III.
## CONCLUSION

Anderson has not shown the district court's failure to preserve the post-proof jury instructions in the record deprived him of an adequate record for review and violated his right to due process as his assertions of potential error are merely speculative. In regard to the alleged prosecutorial misconduct, even assuming the prosecutor misstated the law during closing arguments by distorting the reasonable doubt and burden of proof standards, it does not constitute reversible error because the jury was properly instructed as to the reasonable doubt standard. Additionally, Anderson has not shown the prosecutor committed misconduct by disparaging the defense or commenting on the veracity of Anderson's testimony during closing argument. Finally, although the prosecutor committed misconduct by improperly vouching for the credibility and sufficiency of the evidence in rebuttal argument, Anderson has not shown this error was prejudicial such that it constituted fundamental error, nor has he shown the cumulative error doctrine is applicable. Anderson's judgment of conviction for rape is affirmed.

Judge LANSING and Judge MELANSON **CONCUR.**