**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 35194**

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | 2010 Opinion No. 11S |
| | ) | |
| Plaintiff-Respondent, | ) | Filed: April 9, 2010 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| SHAWN THOMAS WHEELER, | ) | SUBSTITUTE OPINION |
| | ) | THE COURT'S PRIOR OPINION |
| Defendant-Appellant. | ) | DATED FEBRUARY 26, 2010 IS |
| | ) | HEREBY WITHDRAWN. |

Appeal from the District Court of the First Judicial District, State of Idaho, Bonner County. Hon. John P. Luster, District Judge.

Judgment of conviction for felony driving under the influence, <u>affirmed</u>.

Molly J. Huskey, State Appellate Public Defender; Diane M. Walker, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Jessica M. Lorello, Deputy Attorney General, Boise, for respondent.

_____

GRATTON, Judge

Shawn Thomas Wheeler appeals his conviction for driving under the influence, Idaho Code §§ 18-8004(1)(a), 8005(5) with enhancement. We affirm.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

Trooper Jeff Jayne, of the Idaho State Police, received a report that Wheeler was intoxicated and riding his motorcycle on the highway. Trooper Jayne, joined by Lieutenant Jim Drake, observed Wheeler in a rock quarry and determined to monitor him for a period of time. Thereafter, Wheeler, according to the testimony of Trooper Jayne, Lieutenant Drake and an independent witness, rode his motorcycle on the highway. Wheeler turned off the highway onto a privately-owned and abandoned section of highway where he was stopped by Trooper Jayne. A blood test, taken on site, later revealed a blood alcohol content of 0.31. Wheeler's motion to suppress the results of the blood draw was denied by the district court. Wheeler was found guilty

1

by a jury of driving under the influence in violation of I.C. § 18-8004(1)(a) and was found by a bench trial to be a persistent violator under I.C. § 18-8005(5).  Wheeler appeals.

## II.

## ANALYSIS

Wheeler claims that his conviction should be reversed and remanded for a new trial because of prosecutorial misconduct and failure to suppress the results of the blood draw. Wheeler contends prosecutorial misconduct occurred because Trooper Jayne falsely testified, without correction by the prosecutor, and that the prosecutor vouched for Trooper Jayne in closing arguments.  Wheeler claims the results of the blood test should have been suppressed because he revoked his statutory consent, the circumstances of the blood draw were unreasonable, and the trial court denied the motion based upon false testimony by Trooper Jayne.

A.    **Prosecutorial Misconduct**

While our system of criminal justice is adversarial in nature, and the prosecutor is expected to be diligent and leave no stone unturned, he or she is nevertheless expected and required to be fair.  *State v. Field*, 144 Idaho 559, 571, 165 P.3d 273, 285 (2007).  However, in reviewing allegations of prosecutorial misconduct we must keep in mind the realities of trial.  *Id.* A fair trial is not necessarily a perfect trial.  *Id.*

When there is no contemporaneous objection, a conviction will be reversed for prosecutorial misconduct only if the conduct is sufficiently egregious so as to result in fundamental error.  *Id.*  Prosecutorial misconduct rises to the level of fundamental error when it is calculated to inflame the minds of jurors and arouse prejudice or passion against the defendant, or is so inflammatory that the jurors may be influenced to determine guilt on factors outside the evidence.  *State v. Kuhn*, 139 Idaho 710, 715, 85 P.3d 1109, 1114 (Ct. App. 2003).  However, even when prosecutorial misconduct has resulted in fundamental error, the conviction will not be reversed when that error is harmless.  *Field*, 144 Idaho at 571, 165 P.3d at 285.  The test for whether prosecutorial misconduct constitutes harmless error is whether the appellate court can conclude, beyond a reasonable doubt, that the result of the trial would not have been different absent the misconduct.  *State v. Pecor*, 132 Idaho 359, 368, 972 P.2d 737, 746 (Ct. App. 1998).

When the defendant did not object at trial, our inquiry is, thus, three-tiered.  *See Field*, 144 Idaho at 571, 165 P.3d at 285.  First, we determine factually if there was prosecutorial misconduct.  If there was, we determine whether the misconduct rose to the level of fundamental

2

error.  Finally, if we conclude that it did, we then consider whether such misconduct prejudiced the defendant's right to a fair trial or whether it was harmless.

## 1.    False testimony

Wheeler argues that "the prosecutor committed misconduct by continuing to allow the police officer to submit false testimony."  The State cannot convict a person with testimony known to be false or allow the testimony to go uncorrected.  *Napue v. Illinois*, 360 U.S. 264, 269 (1959).[1]  A defendant establishes a *Napue* violation upon showing:  (1) the testimony was false; (2) the prosecutor knew or should have known it was false; and (3) the testimony was material. *Hovey v. Ayers*, 458 F.3d 892, 916 (9th Cir. 2006).  Wheeler claims Trooper Jayne gave false testimony at the preliminary hearing, at the suppression hearing, and at trial.  Because Wheeler is appealing his conviction, preliminary hearing testimony is reviewed only as it relates to the suppression hearing or trial testimony.

Wheeler's claim of false testimony focuses on Trooper Jayne's rather consistent testimony that he first read Wheeler the I.C. § 18-8002 advisory form and then requested Wheeler to perform a breath test.  The State concedes that from the audio/video made at the time it appears that Trooper Jayne first requested a breath test and then read the advisory form.  This apparent inconsistency was explored fully at trial.  Indeed, much of the testimony was elicited on cross-examination rather than by the prosecutor.  The only issue disputed at trial was whether Wheeler drove on the highway.  The order of the breath test request and the reading of the advisory form bore no relevance to whether Wheeler drove on the highway, except as the inconsistency may have related to Trooper Jayne's general credibility.  Wheeler attempted to impeach Trooper Jayne on this point.  Wheeler asked Trooper Jayne:

> Q:  Now, Trooper Jayne, have you had an opportunity to review the video of the full, entire contact between Mr. Wheeler and yourself?
> A:  I have.
> Q:  And do you still stand by that testimony that you provided under oath in front of -- for the Court related to that statement?
> A:  Yes, I do.
> Q:  So it's your testimony today that you asked Mr. Wheeler to provide you a breath sample after reading his 18-8002 rights?

---

[1]    The State contends that a *Napue* claim cannot be raised for the first time on appeal and must have been presented first to the trial court.  Because of our disposition of the merits of the claim, we need not address the State's contention in this case.

A: I asked him during -- right prior or during the arrest procedure when I tried to get him to cooperate and do standardized sobriety evaluations, and again following the reading of the 18-8002.

The record reflects that Trooper Jayne had a prior history with Wheeler in which he was uncooperative relative to evidentiary testing and that through his words and actions in this instance he communicated with Wheeler regarding breath testing both before and after reading the advisory form. Although the testimony appears to be inconsistent with the video, not everything which was occurring is discernable from the video. Wheeler extensively cross-examined Trooper Jayne as to this testimony and argued that the jury should not believe Trooper Jayne relative to this point and relative to whether Wheeler drove on the highway. Trooper Jayne stood by his testimony and the jury was presented the full picture. There was nothing left for the prosecutor to do relative to this testimony. No prosecutorial misconduct occurred relative to this testimony.

### 2. Vouching

Wheeler argues that the prosecutor improperly vouched for Trooper Jayne during the closing arguments. A prosecutor can improperly vouch for a witness by placing the prestige of the state behind the witness or referring to information not given to the jury that supports the witness. *United States v. Edwards*, 154 F.3d 915, 921 (9th Cir. 1998).

Closing argument serves to sharpen and clarify the issues for resolution by the trier of fact in a criminal case. *State v. Phillips*, 144 Idaho 82, 86, 156 P.3d 583, 587 (Ct. App. 2007). Its purpose is to enlighten the jury and to help the jurors remember and interpret the evidence. *Id.*; *State v. Reynolds*, 120 Idaho 445, 450, 816 P.2d 1002, 1007 (Ct. App. 1991). Both sides have traditionally been afforded considerable latitude in closing argument to the jury and are entitled to discuss fully, from their respective standpoints, the evidence and the inferences to be drawn therefrom. *State v. Sheahan*, 139 Idaho 267, 280, 77 P.3d 956, 969 (2003); *Phillips*, 144 Idaho at 86, 156 P.3d at 587.

Closing argument should not include counsel's personal opinions and beliefs about the credibility of a witness or the guilt or innocence of the accused. *Phillips*, 144 Idaho at 86, 156 P.3d at 587. *See also State v. Garcia*, 100 Idaho 108, 110-11, 594 P.2d 146, 148-49 (1979); *State v. Priest*, 128 Idaho 6, 14, 909 P.2d 624, 632 (Ct. App. 1995); *State v. Ames*, 109 Idaho 373, 376, 707 P.2d 484, 487 (Ct. App. 1985). A prosecuting attorney may express an opinion in

4

argument as to the truth or falsity of testimony or the guilt of the defendant when such opinion is based upon the evidence, but the prosecutor should exercise caution to avoid interjecting his or her personal belief and should explicitly state that the opinion is based solely on inferences from evidence presented at trial. *Phillips*, 144 Idaho at 86 n.1, 156 P.3d at 587 n.1. The safer course is for a prosecutor to avoid the statement of opinion, as well as the disfavored phrases "I think" and "I believe" altogether. *Id.*

Wheeler argues the prosecutor vouched for Trooper Jayne, and because there was no objection below, he argues it as fundamental error. In response to Wheeler's closing argument that Trooper Jayne and other witnesses were not credible as to whether they saw Wheeler drive on the road the prosecutor, in rebuttal, stated:

> According to [Wheeler's] story, he went into a different entrance to that old highway than all three witnesses saw him go into, and his explanation was, "I drove around in a circle and then I drove all the way up to the guardrail and I came back to where I had contact with Officer Jayne."
>
> Think about the credibility of the witnesses. Think about what the witnesses have to gain or protect by the manner in which they testified. You weigh that testimony against the testimony of Officer Jayne, who if he comes into court and falsifies testimony, he risks his entire career.
>
> You could -- a case like this, you can always find little details because of people -- the way people recall things, the way things are recorded. *There's nothing wrong with Officer Jayne's investigation because there's some minor inconsistency between something that was said in three different places. Did you hear anything that struck you as being, the officer is lying? I mean, everything that the officer said has been corroborated by the evidence that's been offered to you by the defense. So think about that. Is he going to risk his career to make this case?* Is [the other officer] going to risk his career by falsifying testimony to make this case? It's incomprehensible that that would happen.

(Emphasis added.) Wheeler claims the above-emphasized portion of the quoted remarks constitute improper vouching and reference to evidence not in the record. Except for the statement regarding Trooper Jayne risking his career, the remaining argument is clearly proper in response to the claim that Trooper Jayne was not credible and was made with reference to the evidence.

In *State v. Gross*, 146 Idaho 15, 20, 189 P.3d 477, 483 (Ct. App. 2008), the prosecutor stated in closing arguments:

> Do you think, honestly believe I'm going to come up here with doctored tapes and cut things out? That's ridiculous. I hope you understand that is

ridiculous. I would lose my job. [The arresting officer] would lose his job. I would be on the front page of USA Today tomorrow.

This Court found the statement regarding the officer losing his job to be improper vouching by referring to facts not in evidence. The case was reversed on cumulative error because there were many other instances of misconduct. *Id*. at 21, 189 P.3d at 483. Here, the prosecutor's question regarding whether Trooper Jayne would risk his career by falsely testifying did not expressly state a fact not in evidence, as in *Gross*, but, instead, was an argument to the jury of a common sense consideration to factor into the credibility determination. The argument was, therefore, not misconduct.

## B.   Motion to Suppress

Wheeler argues that his motion to suppress the results of his blood draw should have been granted because he revoked his statutory consent, the circumstances of the blood draw were unreasonable, and the trial court denied the motion based on false testimony.

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999). In this review, this Court considers the evidence that was before the trial court when the suppression motion was addressed.

The State's administration of a blood alcohol test constitutes a search for evidence and seizure of the person under the Fourth Amendment and Article 1, § 17 of the Idaho Constitution. *State v. Diaz*, 144 Idaho 300, 302, 160 P.3d 739, 741 (2007). Searches and seizures performed without a warrant are presumptively unreasonable. *State v. LaMay*, 140 Idaho 835, 837-38, 103 P.3d 448, 450-51 (2004). To overcome the presumption, the State must show that: (1) the search fell within a well-recognized exception to the warrant requirement; and (2) the search is reasonable in light of all the surrounding circumstances. *Id*. at 838, 103 P.3d at 451; *Halen v. State*, 136 Idaho 829, 833, 41 P.3d 257, 261 (2002).

6

Wheeler first argues that the blood draw was unreasonable because he revoked his consent, thus eliminating the exception to the warrant requirement. Consent is a well-recognized exception to the warrant requirement. *Diaz*, 144 Idaho at 303, 160 P.3d at 742. "Any person who drives or is in actual physical control of a motor vehicle" in Idaho consents to be tested for alcohol at the request of a peace officer with reasonable grounds to believe the person drove under the influence. I.C. § 18-8002(1); *Diaz*, 144 Idaho at 302, 160 P.3d at 741. In *Diaz*, the Court found that the defendant gave his consent to a blood draw by driving in Idaho, despite his repeated protests. *Id*. at 302-03, 160 P.3d at 741-42. In view of the Supreme Court's decision in *Diaz*, we conclude that a protest to a blood draw does not invalidate consent created by a person's actions and statute.

Wheeler also argues that peace officers can impose blood draws over a suspect's protest only in the circumstances listed at I.C. § 18-8002(6)(b): a DUI that causes great bodily harm; vehicular manslaughter; aggravated operation of a vessel on Idaho waters; or any criminal homicide involving a vessel on Idaho waters. The Supreme Court has rejected his argument and held that I.C. § 18-8002(6)(b) only speaks to when a peace officer can order an authorized person to perform a blood draw over the *authorized person's* objection. *Diaz*, 144 Idaho at 303-04, 160 P.3d at 742-43. "Nothing in Idaho Code § 18-8002 limits the officer's authority to require a defendant to submit to a blood draw." *Id*. at 303, 160 P.3d at 742.

Wheeler next argues the blood draw was unreasonable.

> Regardless of how it qualifies as an exception to the warrant requirement, a blood draw must comport with Fourth Amendment standards of reasonableness. To that end, the procedure must be done in a medically acceptable manner and without unreasonable force. Fourth Amendment reasonableness standards are assessed objectively by examining the totality of the circumstances.

*Diaz*, 144 Idaho at 303, 160 P.3d at 742 (internal quotes and citations omitted). Wheeler claims that the blood draw was conducted in a medically unacceptable manner and that unreasonable force was used. Wheeler argued at the suppression hearing that: (1) the individual performing the blood draw was not authorized or appropriately trained; (2) performing the blood draw in the back of a patrol car is medically unacceptable; and (3) each officer holding one of Wheeler's wrists during the blood draw was unreasonable force. Trooper Jayne was the only witness at the suppression hearing, and no other evidence was submitted. He testified that Wheeler would not cooperate in performing the field sobriety tests, Wheeler refused to take a breath test, an

7

ambulance arrived with an individual that said he was authorized to perform blood draws, the officers held Wheeler's wrists in the back of the police car as the blood draw was performed, and Wheeler protested but did not physically fight the blood draw.

From this evidence, the trial court found the blood draw to be done in a medically acceptable manner and without unreasonable force. The court found that "the person that drew the blood appears to be a medical technician qualified to do that." The trial court considered the fact that the blood was drawn in the back of a patrol car rather than a hospital, as in *Diaz*, and found it to be a medically acceptable manner because: (1) it was drawn by an emergency medical responder; (2) there was no evidence it was done in a medically unacceptable manner; and (3) generally in everyday life blood is drawn in a number of places outside of hospitals. Finally, the trial court found the use of force was reasonable because Wheeler was intoxicated, he had been uncooperative with the police on other sobriety tests, having him physically uncooperative could be dangerous, and the officers only held Wheeler's wrists for control more so than in restraint.

The trial court's factual determinations are supported by the record. The trial court correctly concluded that the blood draw was administered in a medically acceptable manner without unreasonable force. The person that drew Wheeler's blood was part of an ambulance crew and stated he was authorized to draw blood. Wheeler provided no evidence to the contrary. The evidence presented at the suppression hearing does not show that the location of the blood draw or the procedure was medically unacceptable. Further, the officers' holding of Wheeler's wrists was reasonable because he refused to cooperate in less-intrusive tests, protested the blood draw, and flexed his hand in an attempt to prevent it, and because it provided stability for the blood draw.

On appeal, most of Wheeler's argument is based upon his contention, as addressed above, that the blood test results should have been suppressed because Trooper Jayne testified falsely at the suppression hearing about the order of reading the advisory warning before asking him to take a breath test, rather than upon medical acceptability and reasonable force. Wheeler did not present the video tape at the suppression hearing nor did he renew the motion at trial once the video was in evidence. These arguments were not before the trial judge when the motion to suppress was denied and will not be considered for the first time on appeal. *State v. Fodge*, 121 Idaho 192, 195, 824 P.2d 123, 126 (1992).

8

## III.
## CONCLUSION

Wheeler has failed to demonstrate prosecutorial misconduct relative to Trooper Jayne's testimony. The prosecutor's reference in rebuttal argument to Trooper Jayne risking his job was not error. The trial court properly denied Wheeler's motion to suppress. Wheeler's judgment of conviction is affirmed.

Chief Judge LANSING and Judge MELANSON, **CONCUR.**