IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket No. 41512

| STATE OF IDAHO, | ) | 2014 Unpublished Opinion No. 769 |
| | ) | |
| Plaintiff-Respondent, | ) | Filed: October 16, 2014 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| SHANE ROY DENTON, | ) | THIS IS AN UNPUBLISHED |
| | ) | OPINION AND SHALL NOT |
| Defendant-Appellant. | ) | BE CITED AS AUTHORITY |
| | ) | |

Appeal from the District Court of the Fifth Judicial District, State of Idaho, Twin Falls County. Hon. Eric J. Wildman, District Judge.

Judgment of conviction for attempted strangulation, <u>affirmed</u>.

Sara B. Thomas, State Appellate Public Defender; Brian R. Dickson, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Daphne J. Huang, Deputy Attorney General, Boise, for respondent.

_____

MELANSON, Judge

Shane Roy Denton appeals from his judgment of conviction for attempted strangulation. Specifically, Denton alleges fundamental error in his trial as a result of the prosecution's closing argument that Denton contends misrepresented the law, vouched for a witness, and disparaged defense counsel. For the reasons set forth below, we affirm.

I.

FACTS AND PROCEDURE

Denton and his wife had been having marital problems and were considering divorce. During a discussion about the future of their marriage, Denton's wife (the victim) told him that she still wanted to separate despite Denton's desire to reconcile. Denton became increasingly agitated as the discussion progressed, causing the victim to step away from him. According to the state's evidence at trial, when she did this, Denton grabbed her by the throat, lifted her up and slammed her to the ground, continuing to strangle her. The victim struck Denton in the face

1

multiple times in an attempt to escape, but he only tightened his grasp on her throat until she lost consciousness. At some point, Denton released the victim. She awoke, left the apartment, and drove to the emergency room with her son, where she recounted the incident to the emergency room (ER) doctor and, later, to a police officer.

Denton was subsequently charged with attempted strangulation, I.C. § 18-923. After the presentation of evidence at trial, the state presented its closing argument. Denton made no objection to the content of the closing argument. The jury found Denton guilty. Denton appeals.

## II.

## ANALYSIS

Denton alleges prosecutorial misconduct occurred during the state's closing argument by the prosecutor's misrepresentation of the applicable law, vouching for a witness, and disparaging of defense counsel. While our system of criminal justice is adversarial in nature, and the prosecutor is expected to be diligent, he or she is nevertheless required to be fair. *State v. Field*, 144 Idaho 559, 571, 165 P.3d 273, 285 (2007). However, in reviewing allegations of prosecutorial misconduct, we remain cognizant of the realities of trial. *Id.* Indeed, a fair trial is not necessarily a perfect trial. *Id.*

Denton made no contemporaneous objection to the prosecutor's closing statement at trial. In *State v. Perry*, 150 Idaho 209, 245 P.3d 961 (2010), the Idaho Supreme Court clarified that an appellate court should reverse for misconduct not followed by a contemporaneous objection only when the defendant establishes fundamental error. This requires the defendant to persuade the court that the alleged error: (1) violates one or more of the defendant's unwaived constitutional rights; (2) is clear or obvious without the need for reference to any additional information not contained in the appellate record; and (3) there is a reasonable possibility that the error affected the outcome of the trial proceedings. *Id.* at 226, 245 P.3d at 978.

Closing argument serves to sharpen and clarify the issues for resolution by the trier of fact in a criminal case. *Herring v. New York*, 422 U.S. 853, 862 (1975); *State v. Phillips*, 144 Idaho 82, 86, 156 P.3d 583, 587 (Ct. App. 2007). Its purpose is to enlighten the jury and to help the jurors remember and interpret the evidence. *Phillips*, 144 Idaho at 86, 156 P.3d at 587; *State v. Reynolds*, 120 Idaho 445, 450, 816 P.2d 1002, 1007 (Ct. App. 1991). Both sides have traditionally been afforded considerable latitude in closing argument to the jury and are entitled to discuss fully, from their respective standpoints, the evidence and the inferences to be drawn

therefrom. *State v. Sheahan*, 139 Idaho 267, 280, 77 P.3d 956, 969 (2003); *Phillips*, 144 Idaho at 86, 156 P.3d at 587. Whether comments during closing arguments rise to the level of fundamental error is a question that must be analyzed in the context of the trial as a whole. *State v. Severson*, 147 Idaho 694, 720, 215 P.3d 414, 440 (2009). The relevant question is whether the prosecutor's comments so infected the trial with unfairness as to make the resulting conviction a denial of due process. *State v. Carson*, 151 Idaho 713, 718-19, 264 P.3d 54, 59-60 (2011).

## A.    Misrepresenting the Law

Denton argues that the prosecutor misrepresented the law when she stated in closing argument that "you can't use double hearsay to prove somebody is inconsistent," and that "you have to ask the person who made the comment and allow them to respond." According to Denton, these statements incorrectly conveyed to the jury that, because the officer's testimony was double hearsay, it could not be considered, and that the victim's hearsay statements could not be used to show inconsistency in her story unless she was given an opportunity to respond.

It is prosecutorial misconduct for a prosecutor to misstate the law in closing arguments. *State v. Coffin*, 146 Idaho 166, 170, 191 P.3d 244, 248 (Ct. App. 2008); *Phillips*, 144 Idaho at 86, 156 P.3d at 587. Idaho Rule of Evidence 806 governs when the credibility of a hearsay declarant may be attacked or supported and provides:

> When a hearsay statement, or a statement defined in Rule 801(d)(2), (C), (D), or (E), has been admitted in evidence, the credibility of the declarant may be attacked, and if attacked may be supported, by any evidence which would be admissible for those purposes if declarant had testified as a witness. Evidence of a statement or conduct by the declarant at any time, inconsistent with declarant's hearsay statement, is not subject to any requirement that declarant may have been afforded an opportunity to deny or explain. If the party against whom a hearsay statement has been admitted calls the declarant as a witness, the party is entitled to examine the declarant on the statement as if under cross-examination.

In this case, the hearsay that was admitted into evidence, pursuant to I.R.E. 803(4), was the victim's statements to the ER doctor about the incident. Denton contends that I.R.E. 806 allowed him to introduce "evidence of a statement or conduct by the declarant at any time, inconsistent with declarant's hearsay statement," including the subsequent hearsay statements made to the officer, without "any requirement that declarant may have been afforded an opportunity to deny or explain." We agree. The officer's testimony regarding the victim's hearsay statements, as recorded in the officer's affidavit of probable cause, was admissible under I.R.E. 803(8)(A), which is the rule the district court cited in admitting the evidence over the

3

state's objection. As a result, the inconsistent statements could be used to attack the victim's credibility pursuant to I.R.E. 806 without any requirement that Denton ask the victim directly about the inconsistencies to give her a chance to respond.[1] Thus, the prosecutor's statements were a misrepresentation of the law and that misrepresentation constitutes prosecutorial misconduct which is clear from the face of the record. Accordingly, Denton has met the first two requirements for showing fundamental error.

However, we conclude that, in the context of the entire trial and in light of all the evidence presented therein, there is not a reasonable possibility that the error affected the outcome of Denton's trial. The prosecutor's statements were but a small portion of a larger closing argument that emphasized legitimate reasons that the victim's inconsistent statements were of little consequence. In addition, Denton's counsel highlighted several inconsistencies between the victim's trial testimony and what was reported to the ER doctor and the officer, which would not be affected by the misrepresentation. It is unlikely that the jury's decision was swayed by the very brief statement from the prosecutor made in the midst of rebuttal closing argument.

Moreover, the inconsistencies in the victim's statements to the ER doctor and the officer related solely to whether the victim lost consciousness as a result of being strangled and whether the victim was able to break free from Denton's grasp. Specifically, the victim reported to the doctor that Denton continued to strangle her until she lost consciousness, but she reported to the officer that she was able to break free (though she was not sure how) and failed to mention that she had lost consciousness. Although the defense strategy was to highlight these inconsistencies to impeach the remainder of the victim's testimony, these inconsistencies do little to undermine the victim's account that Denton grabbed her by the neck, lifted her up, slammed her to the ground, and continued to strangle her. This basic account of events was consistently reported to both the ER doctor and the officer and was supported by their accounts of the victim's demeanor and the physical marks on the victim. There was also testimony from the victim's son regarding the immediate aftermath of the incident that supported the victim's account. The victim's account was further supported by her testimony regarding her difficulties swallowing and

---

[1] As Denton correctly notes, the proper way for the prosecutor to rebut the alleged inconsistent statements would be to recall the victim and afford her the opportunity to explain.

attendant throat pain following the incident. Moreover, the ER doctor testified that the victim was distressed when reporting about the incident and that she had physical trauma to her neck that was not inconsistent with strangulation or choking. Thus, the evidence presented at trial established a prima facie case of attempted strangulation. The subsequent events that the victim inconsistently reported were of little relevance to the state's case, as there was ample evidence, even in light of the inconsistencies, to show that Denton willfully choked or attempted to strangle the victim. *See* I.C. § 18-923 ("Any person who willfully and unlawfully chokes or attempts to strangle a household member, or a person with whom he or she has or had a dating relationship, is guilty of a felony punishable by incarceration for up to fifteen (15) years in the state prison.").[2] It is doubtful that, even without the prosecutor's misrepresentation of law during closing argument, the jury would have found all of the remaining testimony incredible and discounted the physical and circumstantial evidence supporting the relevant substance of the victim's account. Accordingly, Denton has failed to show a reasonable possibility that the error affected the outcome of his trial and, therefore, cannot establish fundamental error on this basis.

## B. Vouching for Witnesses

Denton alleges that the prosecutor improperly vouched for a witness by invoking the hearsay rules to suggest that the ER doctor's testimony was credible as a matter of law. Closing argument should not include counsel's personal opinions and beliefs about the credibility of a

---

[2] The district court instructed the jury regarding the elements the state had to prove beyond a reasonable doubt as follows:

> In order for [Denton] to be guilty of attempted strangulation, the state must prove each of the following:
> One, on or about December 26th, 2012;
> Two, in the state of Idaho;
> Three, the defendant, Shane Roy Denton, choked or attempted to strangle;
> Four, [the victim];
> Five, willfully and unlawfully; and
> Six, [the victim] was a household member at the time of the offense.
> . . . .
> Persons are household members if they are married to each other or previously married to each other or have a child in common.
> . . . .
> An act is willfully or done willfully when done on purpose. One can act willfully without intending to violate the law, to injure another, or to acquire any advantage.

witness or the guilt or innocence of the accused. *Phillips*, 144 Idaho at 86, 156 P.3d at 587. Nor should the prosecutor vouch for a witness by placing the prestige of the state behind the witness's testimony. *State v. Wheeler*, 149 Idaho 364, 369, 233 P.3d 1286, 1291 (Ct. App. 2010). A prosecuting attorney may express an opinion in argument as to the truth or falsity of testimony or the guilt of the defendant when such opinion is based upon the evidence, but the prosecutor should exercise caution to avoid interjecting his or her personal belief and should explicitly state that the opinion is based solely on inferences from evidence presented at trial. *Id.* at 369, 233 P.3d at 1291; *Phillips*, 144 Idaho at 86 n.1, 156 P.3d at 587 n.1.

> Denton contends that the improper vouching occurred through the following statements:

> What [ER doctor] does is she takes the medical history. She takes down what she's told by the victim. Why isn't that hearsay under Idaho law? Because it's believed that any statements you make to a doctor are statements that you make to tell them about your injuries.

The above statement did not constitute vouching for the witness. The prosecutor neither expressed her personal opinion that the witness was credible nor placed the prestige of the state behind the witness's testimony. Instead, the prosecutor's statement did little more than summarize I.R.E. 803(4), which is the hearsay exception for statements made for purposes of medical diagnosis or treatment.[3] The context in which the statement occurred does not support Denton's claim that the jury was likely to understand this as suggesting that the doctor's testimony was credible as a matter of law. On the contrary, the statement clarified why the ER doctor's testimony about what the victim told her was admissible. Any inference this statement allowed regarding the credibility of the ER doctor's testimony was likely minimal and, in any event, permissible. Accordingly, the challenged statements were not improper, and Denton has failed to show a violation of his unwaived constitutional rights.

## C. Disparaging Defense Counsel

Denton also contends that the prosecutor committed misconduct by disparaging defense counsel through the following statements:

---

[3] Denton argues that the prosecutor's comment was not an accurate statement of law because the prosecutor said that what the victim reported to the ER doctor was not hearsay when, in reality, the statements fell within an exception to the hearsay rule under I.R.E. 803(4). As a result, he argues, the prosecutor's comment cannot be justified as simply a correct statement of law. There is no substantive difference in this distinction and it is doubtful the jury noticed or placed any weight on such a fine legal distinction.

[Defense counsel] wants you to believe that there is inconsistencies in [the victim]'s story, but how did those inconsistencies come out? [Defense counsel] had [the victim] on the stand, didn't he? [Defense counsel] referred to talking to [the victim]. He said you talked to the triage, she said yes. You talked to the ER doctor, she said yes. You wrote a written statement, she said yes. He referred to the preliminary testimony. She said yes. *But he never challenged [the victim] on any of those. He didn't pick it up and say, didn't you say here in your statement da-da-da-da-da-da. He never asked her because he didn't want her to say, that's not what I said.*

*What does he do? He waits and gets [the officer] on the stand and says, [the victim] told you this and that's inconsistent, isn't it?* What did [the officer] say to you. No, she didn't tell me that. That is my interpretation. I read to you a quote and asked you, asked officer, the officer, is this what [the victim] said? And what [the victim] said is he was bleeding on me. I don't remember him letting go. I just remember waking up and grasping for air. So is there inconsistency? No, there's not.

*. . . So if you can't point out discrepancies in somebody's testimony to that person, let's use somebody else. . . .*

*. . . .*

*You know, if you can't break your witness, if you can't make them say something inconsistent, what do you do? You go after law enforcement. So, sure enough, let's go after [the officer].*

(Emphasis added.)

Closing arguments should not include disparaging comments about opposing counsel. *Sheahan*, 139 Idaho at 280, 77 P.3d at 969; *State v. Page*, 135 Idaho 214, 223, 16 P.3d 890, 899 (2000); *Phillips*, 144 Idaho at 86, 156 P.3d at 587; *State v. Baruth*, 107 Idaho 651, 657, 691 P.2d 1266, 1272 (Ct. App. 1984). Although a prosecutor has every legitimate right to point out the weaknesses in a defendant's case, it is improper to unfairly cast the role of a defendant's counsel. *Baruth*, 107 Idaho at 657, 691 P.2d at 1272.

Denton argues that the prosecutor here unfairly cast the role of defense counsel by arguing about how defense counsel did his job or should have done his job. Denton argues that this case is similar to the circumstances in *Baruth* and warrants reversal as a result. We disagree. In *Baruth*, the defendant was on trial for armed robbery. During closing argument, the prosecutor stated that "doubt is a defense attorney's stock and trade" and that defense counsel would "market it, package it, and huckster it to the first juror in the box until the last word is out of their mouth." *Id.* The prosecution also belittled the competence of defense counsel and suggested that defense counsel believed the prosecution should apologize for bringing the case. *Id.*

Here, unlike in *Baruth*, the prosecutor did not unfairly malign the defense counsel's role or belittle his abilities. The prosecutor's statements were made in rebuttal to defense counsel's closing argument in which defense counsel suggested that the victim's statements were inconsistent and, therefore, unreliable. The statements served not to belittle defense counsel or unfairly cast his role but, instead, to point out the weaknesses in his arguments resulting from his failure to elicit certain evidence during the trial. Such is not improper. Accordingly, Denton has failed to show that the prosecution violated Denton's unwaived constitutional rights by disparaging defense counsel.

## III.

## CONCLUSION

Although the prosecutor committed error by misrepresenting the law in her closing argument, there is not a reasonable possibility that the error affected the outcome of Denton's trial. Additionally, the prosecutor neither vouched for a witness nor disparaged defense counsel through her closing argument. Thus, Denton has failed to establish fundamental error. Accordingly, we affirm Denton's judgment of conviction for attempted strangulation.

Judge LANSING and Judge GRATTON, **CONCUR.**