# IN THE SUPREME COURT OF THE STATE OF IDAHO
## Docket No. 44556

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | |
| | ) | |
| Plaintiff-Respondent, | ) | Boise, May 2018 Term |
| | ) | |
| v. | ) | Filed: September 14, 2018 |
| | ) | |
| JOHN JACOB BERNAL, | ) | Karel A. Lehrman, Clerk |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Deborah A. Bail, District Judge.

The judgment of the district court is affirmed.

Eric D. Fredericksen, State Appellate Public Defender, for Appellant. Sally Jane Cooley argued.

Hon. Lawrence G. Wasden, Attorney General, for respondent. Theodore Steven Tollefson argued.

---

BEVAN, Justice

John Jacob Bernal appeals his judgment of conviction. Bernal argues a fatal variance between the charging document and two jury instructions denied him due process amounting to fundamental error. Bernal also contends two instances of prosecutorial misconduct amounted to fundamental error. We affirm the district court's judgment of conviction.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Carmen Becerra and Bernal dated for approximately eight years. By March 2016, their relationship was strained. One afternoon, Carmen was visiting her cousin's house in Meridian. Bernal showed up and asked her if they could talk. Carmen agreed to meet Bernal at his aunt's house in Boise. Carmen left her cousin's house in an SUV; Bernal left in a blue Buick. On their way to Boise, both Carmen and Bernal drove down Five Mile Road until they were stopped by road construction. While they were stopped, Bernal got out of his vehicle and walked toward

1

Carmen, who was stopped behind him. Carmen testified Bernal looked angry, so she turned onto a side street to avoid a confrontation.

Carmen testified she was driving fast so she could get away from Bernal, but he got back into his vehicle and followed her. She stated she was scared because Bernal was "tailing her." She continued driving through various side streets to avoid Bernal, and when she turned onto Granger Avenue, she sped up. Carmen testified that Bernal was matching her speed. While Bernal was following Carmen, she was on the phone with her brother, Gustavo Becerra. Gustavo testified that he could hear screaming, speeding, braking, commotion, and then Carmen abruptly hung up.

While on Granger Avenue, Carmen hit her brakes, causing Bernal to lose control, spin out, and crash into a parked vehicle. The owner of the parked vehicle, Mr. Le, testified he saw a blue Buick hit his vehicle, but could not positively identify the driver. After the collision, Carmen waited to see if Bernal was okay. After Bernal exited his vehicle, Carmen drove to her home where she lived with her mother, Gustavo, and Gustavo's family. Gustavo, who was not at home at the time, drove to their house where he met Carmen and let her inside.

Gustavo testified when he was a few blocks from his house, he saw Bernal "very fast-paced, walking, look[ing] determined, with his hands in his pocket" heading toward the house. Gustavo stated he was worried about his family, especially his wife and son, so when he got home, he grabbed a baseball bat, stepped outside, placed the bat against the side of the house, and waited for Bernal to arrive. Almost immediately, Bernal arrived on foot. As Bernal was approaching the house, Gustavo told Bernal to leave. As Bernal got closer, Gustavo testified that he saw Bernal's hand in his pocket and that "he had ahold of something" as he was walking toward him. When Bernal made it halfway through the yard, Gustavo, who was still on the porch, picked up his baseball bat.

After seeing the knife, Gustavo testified he hit Bernal in the left leg with the bat. After he was hit, Bernal took a step back, extended the blade of his knife, and assumed an aggressive posture. Gustavo stated that when he saw the knife he backed up and told Bernal to leave. Bernal then asked for a ride, started walking toward the front door, and lunged at Gustavo when he stepped in his way. Gustavo again hit Bernal with the bat, this time in the ribs. Gustavo testified that Bernal backed up and told him, "I'll be back," "I'm gonna catch you sleeping," and then "I'm gonna F you up." According to Gustavo, Bernal kept making threats as he walked away.

Gustavo followed Bernal to escort him off the property. Gustavo stated Bernal made his way into the street, then "whipped the knife out of his pocket," turned around, and lunged at him. Gustavo backed up to dodge the knife and stayed in his yard as Bernal made additional threats, turned around, and slowly walked away. Gustavo testified that the knife missed his face by only three to four inches. In addition to Gustavo's testimony regarding the assault, Carmen testified that she saw Bernal lunge toward Gustavo and saw Gustavo hit Bernal with the bat.

Bernal was charged by information with three crimes: aggravated assault with a deadly weapon, Idaho Code sections 18-901(a) and 18-905(a); reckless driving, Idaho Code section 49-1401; and leaving the scene of an accident, Idaho Code section 49-1301. The State also charged a sentencing enhancement under Idaho Code section 19-2520 as a separate count in the information.[1] At the close of evidence at trial, Bernal did not object to the proposed jury instructions. During closing arguments, Bernal argued he did not have a knife, that Gustavo was not a credible witness, and that Gustavo was the aggressor. He also argued that Mr. Le did not identify him as the driver and "[w]e don't really know whose car, if any, Mr. Bernal hit." Additionally, Bernal argued Carmen credibly testified, contrary to her previous statement to the police, that she did not see Bernal with a knife.

The jury found Bernal guilty on all counts, including the sentencing enhancement, and the district court entered judgment. Bernal timely filed a notice of appeal.

## II. STANDARD OF REVIEW

---

[1]     A sentencing enhancement is not an independent crime and therefore does not constitute a separate cause of action. *See State v. Passons*, 163 Idaho 643, ___, 417 P.3d 240, 243 (2018) (Idaho Code section 19-2520 "does not prescribe a new offense but provides only for the imposition of additional punishment upon conviction of an underlying offense where a firearm or other deadly weapon was involved") (internal quotes omitted). Thus, the State's practice of charging a sentencing enhancement *as a separately enumerated count* is potentially confusing. The Idaho Criminal Jury Instructions intimate that the better practice is that such allegations should be classified as "part two" of the criminal count to which the enhancement relates. *See* I.C.J.I. 222 (verdict form referencing an enhancement as charged in "part II"). Charging other enhancements in "part II" of the information is routine for charges relative to a defendant's persistent violator status pursuant to Idaho Code section 19-2514, being a repeat DUI offender, Idaho Code sections 18–8004, 18–8005(6) or felony enhancement of a misdemeanor domestic battery charge. Idaho Code section 18–918(3)(c). We would encourage prosecutors to charge weapons enhancements in a similar way.

"Where a defendant alleges that a constitutional error occurred at trial, we must first determine whether a contemporaneous objection was made." *State v. Hall*, 163 Idaho 744, 766, 419 P.3d 1042, 1064 (2018) (citing *State v. Perry*, 150 Idaho 209, 245 P.3d 961 (2010)). If the alleged error was not followed by a contemporaneous objection, it must be reviewed under the fundamental error doctrine. *Perry*, 150 Idaho at 228, 245 P.3d at 980. In order to obtain relief under the fundamental error doctrine, a defendant must demonstrate: (1) "one or more of the defendant's unwaived constitutional rights were violated"; (2) the constitutional error is "clear or obvious" on the record "without the need for any additional information," including information "as to whether the failure to object was a tactical decision"; and (3) "the error affected the defendant's substantial rights," by showing a reasonable possibility that the error "affected the outcome of the trial court proceedings." *Id.* at 226, 245 P.3d at 978.

## III. ISSUES ON APPEAL

1. Whether there were fatal variances between the information and the district court's jury instructions.

2. Whether the State committed prosecutorial misconduct during closing arguments.

## IV. ANALYSIS

### A. The variances between the information and the jury instructions do not amount to fundamental error.

Jury instructions should match the allegations in the charging document as to the means by which a defendant is alleged to have committed the charged crime. *State v. Hooper*, 145 Idaho 139, 146–47, 176 P.3d 911, 918–19 (2007). Failure to do so creates a variance. *State v. Folk*, 151 Idaho 327, 342, 256 P.3d 735, 750 (2011). A variance becomes fatal when it violates due process. *See State v. Cariaga*, 95 Idaho 900, 904, 523 P.2d 32, 36 (1974); *De Jonge v. Oregon*, 299 U.S. 353, 362 (1937). In other words, it "depends on whether or not the basic functions of the [notice] pleading requirement have been met." *State v. Windsor*, 110 Idaho 410, 417, 716 P.2d 1182, 1189 (1985). As the United States Supreme Court stated:

> The general rule that allegations and proof must correspond is based upon the obvious requirements (1) that the accused shall be definitely informed as to the charges against him, so that he may be enabled to present his defense and not be taken by surprise by the evidence offered at the trial; and (2) that he may be protected against another prosecution for the same offense.

*Berger v. United States*, 295 U.S 78, 82 (1935) (citations omitted).

Applying this standard presents a two-step process. *State v. Gas*, 161 Idaho 588, 592, 388 P.3d 912, 916 (Ct. App. 2016). First, the appellate court determines whether there was a variance between the information used to charge the crime and the instruction presented to the jury. *Id.* Second, if a variance does exist, then the court examines whether it rises to the level of prejudicial error requiring reversal of the conviction, i.e., whether it is fatal. *Id.* "A variance between a charging instrument and a jury instruction necessitates reversal only when it deprives the defendant of the right to fair notice or leaves him or her open to the risk of double jeopardy."[2] *Id.* The notice element requires this Court to determine whether the defendant was misled or embarrassed in the preparation or presentation of his or her defense. *Windsor*, 110 Idaho at 418, 716 P.2d at 1190.

In *Folk*, this Court found a fatal variance existed when a jury instruction permitted a jury to find the defendant guilty of crimes not charged in the information. *Folk*, 151 Idaho at 342, 256 P.3d at 750. In *State v. Brazil*, the Idaho Court of Appeals found error when a "variance between the information and the jury instructions [regarding the charged crime] prejudiced [the defendant] in the presentation of his defense." *Brazil*, 136 Idaho 327, 331, 33 P.3d 218, 222 (2001).

1.      <u>The variance between the information and Jury Instruction Number 12 was not fatal.</u>

Bernal argues a fatal variance between the information and Jury Instruction No. 12, the reckless driving instruction, violated his right to due process, amounting to fundamental error. The State alleged in the information that Bernal's reckless driving occurred on Five Mile Road, while Instruction No. 12 referenced driving "upon a highway . . . open to the public." Bernal contends the instruction lessened the State's burden of proof, allowing the State to argue an expanded theory of reckless driving which surprised and embarrassed Bernal in the preparation or presentation of his defense.

We agree the discrepancy between the information and Jury Instruction No. 12 created a variance which allowed the State to proceed upon an expanded theory of reckless driving. Without the variance, the State would not have been permitted to refer to the witness' discussion of reckless driving beyond Five Mile Road by stating, "[i]t happened on Five Mile, it happened on Granger; these are public roads," in its closing statement.

---

[2]      On appeal, Bernal does not argue that any variance left him open to the risk of double jeopardy. There is no reason to believe he might be subject to a second prosecution.

However, we conclude the variance was not fatal because Bernal had notice that his driving on Granger Avenue was also at issue--the information, in another count, stated Bernal:

> was the driver of a vehicle involved in an accident resulting in damage to a vehicle . . . [on] Granger Ave. and failed to immediately stop at the scene of the accident and/or remain at the scene of the accident until he had fulfilled the requirements of the law.

Because Bernal had notice his conduct on Granger Avenue was also at issue, he was not misled or embarrassed in the preparation or presentation of his defense. *See Windsor*, 110 Idaho at 418, 716 P.2d at 1190. In fact, Bernal responded to witness testimony about his conduct on Granger Avenue in his closing argument. For example, Bernal stated:

> As to the reckless driving, the testimony is that Carmen's driving down the road [Granger Avenue], [Bernal's] behind her, she slams on his [sic] brakes, and he goes to avoid a collision and hits a car. That's Carmen's testimony. That's not reckless driving if she slams on his brakes--on her brakes and he goes to avoid a collision.

Thus, Bernal put on a defense specifically against the theory of his reckless driving on Granger Avenue by arguing it was Carmen who drove recklessly. Accordingly, the variance was not fatal and Bernal's due process rights were not violated. As a result, Bernal fails to establish the first prong of the fundamental error test.

2.  <u>The variance between the information and Jury Instructions Numbers 8 and 9 was not fatal.</u>

Bernal also argues that a fatal variance between the information; Jury Instruction No. 8, the aggravated assault instruction; and Jury Instruction No. 9, the instruction defining assault, violated his right to due process, amounting to fundamental error. In the information, the State alleged Bernal "did unlawfully and with apparent ability, attempt to commit a violent injury upon the person of Gustavo Becerra, with a deadly weapon, to-wit: a knife and/or by a means likely to produce great bodily harm, to-wit: by attempting to stab Gustavo Becerra with a knife." Jury Instruction No. 8 was consistent with the information's assault-by-attempt theory: "the defendant John Jacob Bernal committed an assault upon Gustavo Becerra by attempting to stab him with a knife." However, Bernal contends Jury Instruction No. 9 allowed the State to also argue an assault-by-threat theory. Jury Instruction No. 9 reads:

> An "assault" is committed when a person:
> (1)     unlawfully attempts, with apparent ability, to commit a violent injury on the person of another; or

6

(2)   intentionally and unlawfully by word or act to do violence to the person of another, with an apparent ability to do so, and *does some act which creates a well-founded fear in the other person* that such violence is imminent. "Imminent" means about to take place.

(Emphasis added).

As Bernal contends, Jury Instruction No. 9 allowed the State to pursue an assault conviction upon an additional theory, assault-by-threat, not alleged in the information. Thus, the instruction did not match the allegations in the information, creating a variance. *See Folk*, 151 Idaho at 342, 256 P.3d at 750; *State v. Day*, 154 Idaho 476, 479, 299 P.3d 788, 791 (2013).

However, we conclude the variance was not fatal because Bernal had notice that the assault-by-threat theory was also at issue--the information alleged Bernal "with a deadly weapon," "attempt[ed] to stab Gustavo Becerra with a knife." This allegation in the information provided notice to Bernal that the State may also prove its case under an assault-by-threat theory. Specifically, assault-by-threat is committed when one "does some act which creates a well-founded fear in the other person." Thus, Bernal was not misled or embarrassed in the preparation or presentation of his defense. *See Windsor*, 110 Idaho at 418, 716 P.2d at 1190. Because Bernal fails to prove the first prong of the fundamental error doctrine for either variance, we need not address the second and third prongs of that doctrine.

**B.    The prosecutor's statements in closing argument do not amount to fundamental error.**

Prosecutorial misconduct occurs when the State "attempts to secure a verdict on any factor other than the law as set forth in the jury instructions and the evidence admitted at trial, including reasonable inferences that may be drawn from that evidence." *State v. Abdullah*, 158 Idaho 386, 440, 348 P.3d 1, 55 (2015) (quoting *Perry*, 150 Idaho at 227, 245 P.3d at 979)). "Indeed, the prosecutor has a duty to avoid misrepresentation of the facts and unnecessarily inflammatory tactics." *State v. Moses*, 156 Idaho 855, 871, 332 P.3d 767, 783 (2014) (internal quotations and citation omitted).

If a prosecutor expresses an opinion as to the credibility of a witness, it must be based on the evidence and should not be couched in terms of a personal opinion. *State v. Garcia*, 100 Idaho 108, 111 n.1, 594 P.2d 146, 149 n.1 (1979). "A prosecutor can improperly vouch for a witness by placing the prestige of the [S]tate behind the witness or referring to information not given to the jury that supports the witness." *State v. Wheeler*, 149 Idaho 364, 368, 233 P.3d 1286, 1290 (Ct. App. 2010) (citing *United States v. Edwards*, 154 F.3d 915, 921 (9th Cir. 1998)); *see*

7

*also State v. Lankford*, 162 Idaho 477, 497, 399 P.3d 804, 824 (2017). However, prosecutors may "argue reasonable inferences based on the evidence, including that one of the two sides is lying. Furthermore, prosecutors are permitted to respond to defense counsel's attempts to impeach the credibility of government witnesses." *Id.* (internal quotations omitted) (citing *United States v. Wilkes*, 662 F.3d 524, 540 (9th Cir. 2011)).

1.    The prosecutor did not commit prosecutorial misconduct by arguing both theories of assault.

Bernal argues the prosecutor committed misconduct by telling the jury in closing argument that the State had proven Bernal committed assault under an assault-by-attempt theory, *and* under an assault-by-threat theory. During closing argument, the prosecutor stated:

> . . . the legal definition of an assault.
>
> It happens in two different ways. Either one of--one of two ways. So, you see that there's an or there, not an and. So, that means that the State can prove this by showing either one or two, or even both if--if both are established, but not both. It doesn't have to be both; just one of--one or the other.

The prosecutor then paraphrased the instruction, articulating the assault-by-attempt and assault-by-threat theories. After a recitation of the facts, the prosecutor argued how the facts supported a finding of guilt on both theories: "So, it's an assault under the definition No. 1. It's also an assault under No. 2 . . . Those are threatening words. But there's also threatening actions . . ."

Bernal's argument is unavailing as we have held the discrepancy between the information and jury instruction did not amount to a fatal variance. This is because attempting to stab someone with a knife, as alleged in the information, constitutes an assault-by-threat. Thus, the prosecutor did not commit misconduct by arguing both theories of assault. Accordingly, Bernal has failed to demonstrate a violation of his due process rights in order to establish the first prong of the fundamental error test.

2.    The prosecutor did not commit prosecutorial misconduct by impermissibly bolstering the testimony of the State's witnesses.

Bernal agues the prosecutor also committed misconduct by vouching for the credibility of the State's witnesses: Carmen, Gustavo, and Mr. Le. In doing so, Bernal claims the prosecutor attempted to secure the verdict on facts and evidence other than those presented at trial, appealing to the passions and prejudices of the jury, and violating Bernal's right to due process.

The prosecutor did not impermissibly vouch for the credibility of the State's witnesses. The record shows the prosecutor's statements were based on inferences from evidence adduced

8

at trial or were responses to Bernal's attempts to impeach the State's witnesses. For example, after Bernal attacked Carmen's credibility as a witness in his closing statement, the prosecutor argued Carmen was credible:

> Let's talk about Carmen. Carmen changed her story. Defense counsel and I agree; she did. And her change of store [sic]--her change in story really shows one thing, she's honest. Because what happened was, she wrote a statement at the scene. She was emotional, she was frightened. She has just gone through a very scary ordeal with this whole driving thing, and then her ex-boyfriend showing up at her house and her brother getting into a scuffle with him. And, you know, she's--she's pretty upset and she's writing a statement.
>
> And in her statement, she says something about the defendant having a knife. Well, today she--she cleared that up, and she said, well, I actually didn't see a knife, I couldn't see his hand. I saw him lunge at my brother. Ladies and gentlemen, that shows that she's honest. She just wants to tell the truth.

The record shows the prosecutor and Bernal agreed on a reasonable inference from the evidence presented at trial--that because Carmen was willing to admit to misstatements, her testimony was credible.

Similarly, when Bernal attacked Gustavo's credibility as a witness, the prosecutor responded in his closing argument:

> . . . Gustavo doesn't necessarily change his story ever. What he does is he provides details. And, ladies and gentlemen, this is a complex story, with people, and vehicles, and time, and it can get complicated as to keeping track of exactly how many seconds went by, exactly what [Bernal] did with the knife at what time.

Again, based on the inferences from the evidence presented, Bernal has failed to show any impermissible vouching arising from the prosecutor's responsive closing argument about Gustavo's credibility.

Last, Bernal argues the prosecutor impermissibly vouched for Mr. Le's credibility. The prosecutor, referring to the testimony of Mr. Le, stated he is "a person who doesn't know Carmen, Gustavo, or John, who sees something happen, and came and . . . he told the truth," and that his testimony provided the jury:

> with another very interesting piece that gives credibility to Carmen and Gustavo's testimony. While his testimony was small, and while he was only talking about the vehicle running into his, just that detail gives you a lot because what you get from that is you get a person who's completely disinterested . . .

So, [he] provides you with this valuable testimony that gets--that gives credibility to the rest of the story, to what's going on, the defendant's escalating conduct; violent, reckless, and intimidating.

Again, the State was responding to Bernal's closing argument that Mr. Le was not credible, namely that Mr. Le could not identify Bernal as the driver of the vehicle. The argument that Mr. Le had no motivation to fabricate a story because he was a disinterested witness was a reasonable inference based upon the admitted evidence.

Because the prosecutor's statements regarding the credibility of the State's witnesses do not amount to impermissible vouching testimony, Bernal's due process rights were not violated. Thus, Bernal has failed to establish prong one of the fundamental error test. Because Bernal fails to prove the first prong, we need not address the second and third prongs of fundamental error.

## V. CONCLUSION

Bernal has failed to show fundamental error arose from an impermissible variance or from prosecutorial misconduct. Therefore, we affirm the judgment of conviction.

Chief Justice BURDICK, Justices HORTON, BRODY and Justice *pro tem* GUTIERREZ, CONCUR.

10